# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2810

_____

| | | |
|---|---|---|
| Marvin D.W. Voeltz, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Arctic Cat, Inc., a Minnesota | * | |
| Domestic Corporation, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  February 17, 2005
Filed:  May 11, 2005

_____

Before MORRIS SHEPPARD ARNOLD, BOWMAN, and GRUENDER, Circuit
Judges.

_____

BOWMAN, Circuit Judge.

Arctic Cat, Inc., appeals from the judgment of the District Court entered in favor of Marvin Voeltz on his claim of disability discrimination under the Americans with Disabilities Act (ADA).  We vacate the actual and front-pay damage awards and remand.

Voeltz began working at Arctic Cat's Madison, South Dakota, manufacturing facility when it first opened in 1992.  In 1997, Voeltz was diagnosed with multiple sclerosis (MS) and made his supervisors aware of his condition.  After that, a number

of accommodations were made to assist Voeltz in performing his duties as his disease progressed—his workspace and equipment were modified, he was given a cooling vest to wear in hot weather, he was allowed more frequent breaks, he was permitted to eat lunch in the conference room so he did not have to climbs stairs, and his job descriptions were modified.

Voeltz worked in the molding department at the Madison facility until those operations were discontinued in 1999. Voeltz then transferred to the welding department, his first choice of other available jobs at the facility, where he began work as a parts handler in March 2000. It was his responsibility to retrieve small parts from inventory and to deliver those parts to the welders. To do so, he used a forklift to reach the bins where the parts were stored and to transport the parts to the welding area. He also had the clerical responsibility of recording identification numbers and amounts as he took parts out of inventory.

Soon after Voeltz started his new job in welding, he was warned and reprimanded by his supervisors for forklift safety violations, carelessness, and posting incorrect numbers on inventory sheets. In August, Arctic Cat wrote to Voeltz's neurologist, Dr. Rossing, inquiring about transferring Voeltz to the department where fuel tanks and skis for snowmobiles were assembled. Rossing responded, stating that Voeltz should not be required to rotate through the four jobs in the assembly department, as other employees were expected to do. Rossing further said that Voeltz wanted to stay in welding as a parts handler. The physician thought that perhaps modifications could be made to the parts-handler duties so that Voeltz could do the job successfully. Rossing suggested that Arctic Cat contact an occupational therapist who specialized in workplace issues, even suggesting someone by name. Arctic Cat never contacted an occupational therapist expressly for the purpose of accommodating Voeltz so that he could adequately perform the parts-handler job, and in October 2000, Voeltz was transferred to assembly. He was not required to rotate through the various positions, but he nevertheless had some performance problems

in this job as well. In December 2000, Voeltz and his coworkers in assembly were seasonally laid off.

In May 2001, Arctic Cat sent Voeltz a letter advising him that he would not be recalled because the company was "unable to find a position which meets [Voeltz's] work restrictions." Letter of May 18, 2001, from DeDe Backhaus to Marvin Voeltz. Voeltz was invited to contact the human resources assistant, or to have Rossing do so, if his restrictions had "improved significantly" or if the neurologist had "any additional suggestions." Id. Voeltz was placed on twelve-week leave under the Family and Medical Leave Act. After the May 18 letter, neither Voeltz nor Rossing contacted human resources at Arctic Cat to make additional suggestions for accommodation.

In March 2002, Voeltz filed suit against Arctic Cat alleging, *inter alia*, disability discrimination under the ADA. The case went to trial and the jury was instructed on the ADA claim on two theories: reasonable accommodation and disparate treatment. The jury found for Voeltz on the theory that Arctic Cat failed to provide reasonable accommodations and awarded him $71,000 in damages. On the disparate-treatment theory, the jury found that Voeltz's MS was a motivating factor in Arctic Cat's adverse employment decisions. But the jury also found that Arctic Cat would have made the same adverse employment decisions (transferring Voeltz and refusing to recall him) even if the company had not considered his disability. Because Arctic Cat prevailed on this "same decision" defense, compensatory or backpay damages could not be awarded on the verdict finding disparate treatment. See Pedigo v. P.A.M. Transp., Inc., 60 F.3d 1300, 1301 (8th Cir. 1995).[1] The jury

---

[1]"[I]n a case where the employee's disability was a motivating factor in the employer's decision but the employer proves that it would have made the same decision absent consideration of the employee's disability, the remedies available are limited to a declaratory judgment, an injunction that does not include an order for reinstatement or for back pay, and some attorney's fees and costs." Pedigo, 60 F.3d

-3-

declined to award damages for intentional infliction of emotional distress or punitive damages, but the District Court ordered Arctic Cat to pay Voeltz $74,626 in front-pay damages and his reasonable attorney fees. Arctic Cat appeals the denial of its motion for judgment as a matter of law (JAML) and the court's decision to award front pay.

Arctic Cat first contends that it was entitled to JAML because of inconsistencies between the representations Voeltz made to secure disability benefits and the testimony he gave at trial regarding his ability to work. Arctic Cat's argument focuses on Voeltz's application for Social Security Disability Insurance (SSDI) benefits, which he made before Arctic Cat's May 18, 2001, letter to Voeltz. In the application, he represented to the government that he became unable to work because of his disabling condition on December 15, 2000, when he was laid off from the assembly position at Arctic Cat.[2] Arctic Cat argues that Voeltz's sworn statement of inability to work cannot be reconciled with his claim in this lawsuit that he could perform his job with accommodations. We review de novo the District Court's denial of Arctic Cat's motion for JAML, viewing the evidence in the light most favorable to the jury's verdict. See Knutson v. Ag Processing, Inc., 394 F.3d 1047, 1050 (8th Cir. 2005).

The Supreme Court has established that "pursuit, and receipt, of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim." Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 797 (1999). Moreover, there is no "special legal presumption" restricting a person who is receiving SSDI benefits from bringing

at 1301. There is no indication that Voeltz sought injunctive or declaratory relief.

[2]Voeltz also had a policy that covered a car loan obligation in the event he became disabled. On the form requesting those benefits, his primary physician wrote that Voeltz's total disability began on December 15, 2000. For his part, Voeltz stated on the form that he became unable to work because of disability on May 18, 2001, the date of the letter from Arctic Cat advising Voeltz that he would not be recalled to work.

an ADA claim. Id. at 805. Still, in order to successfully maintain an ADA suit, such a plaintiff must "proffer a sufficient explanation" for the "apparent contradiction." Id. at 806. Arctic Cat maintains that Voeltz failed to make the necessary explanation.

Voeltz testified that when he applied for social security benefits in April 2001, he did so at the suggestion of an Arctic Cat human resources employee and because he had heard that he might not be called back. He also said that he initially applied for Supplemental Security Income (SSI) benefits, thinking that he might be able to continue working only part-time and would need some additional income. He was told, however, that he would be better off with SSDI benefits. Although he indicated on the benefits application that he was unable to work, he testified at trial that he could have worked—with accommodation. That is, he was unable to work only because Arctic Cat had not accommodated his MS. Granted, he also agreed on cross-examination that he believed he could do the parts-handler job at Arctic Cat "just fine" without accommodation, Transcript vol. II at 181, but any discrepancy in the evidence was for the jury to resolve.

Here, the jury heard all the evidence, including Voeltz's explanation for the contradictory claims; was instructed on the Cleveland standard; and found for Voeltz. There was sufficient record evidence for the jury to conclude that Voeltz's ADA claim was not inconsistent with his application for disability benefits. Reasonable jurors could conclude from the evidence both that Voeltz had a good-faith belief in his SSDI statement that he was unable to work and that he "could nonetheless 'perform the essential functions' of [his] job, with or without 'reasonable accommodation.'" Cleveland, 526 U.S. at 807.

Arctic Cat next argues that the jury's verdict awarding actual damages on the failure-to-accommodate theory cannot stand because of the same jury's finding on the second part of the verdict on disparate treatment—that Arctic Cat would have made

-5-

the same adverse employment decisions even if it had not considered Voeltz's MS. In denying JAML to Arctic Cat, the District Court concluded that because failure to accommodate and disparate treatment are two different theories of ADA liability, "Voeltz's failure to satisfy his burden on the disparate treatment claim does not affect the jury's finding regarding his reasonable accommodation claim." Order Denying Motion for Judgment as a Matter of Law at 10. That is true for the finding that Arctic Cat discriminated against Voeltz by failing to make reasonable accommodations to his disability because, at least in this Circuit, failure to accommodate and disparate treatment are two separate theories of liability under the ADA. See Peebles v. Potter, 354 F.3d 761, 765 (8th Cir. 2004). But the jury made another finding that **is** affected by the disparate-treatment findings: that Voeltz was entitled to actual damages on the failure-to-accommodate verdict.

We have scoured the trial record and have found no evidence of actual damages arising out of Arctic Cat's failure to accommodate Voeltz's disability.[3] The only testimony on actual damages came from an economist who calculated that Voeltz's lost past wages and benefits to the date of trial totaled $71,142. That evidence related to Arctic Cat's decisions to transfer Voeltz and to not recall him from layoff—decisions that did not subject Arctic Cat to liability for backpay given that the jury found for Arctic Cat on the "same decision" defense. Nevertheless, the jury awarded Voeltz $71,000 in actual damages for the failure to accommodate, an amount obviously determined with reference to the witness's backpay calculations. See Order Denying Motion for Judgment as a Matter of Law at 23 (characterizing the jury's award of damages as backpay). But the key here is that the jury did not make a

---

[3]More precisely, Voeltz's case was targeted at an alleged failure to enter into the "interactive process," that is, Arctic Cat's failure to call in an occupational therapist to evaluate Voeltz's working conditions. See, e.g., Ballard v. Rubin, 284 F.3d 957, 960 (8th Cir. 2002) (explaining the elements of proof for a claim of failure to participate in the interactive process).

finding that Voeltz lost his job because of Arctic Cat's failure to engage in the interactive process and accommodate his MS. And if the jury coincidentally found $71,000 in actual damages without regard to the backpay evidence, those damages are purely speculative—there is no other evidence of actual money damages (from Arctic Cat's failure to accommodate or any other of its actions) anywhere in the record. Accordingly, the denial of JAML is affirmed, but the award of actual damages must be vacated.

For its final point, Arctic Cat contends that Voeltz was not entitled to an award of front pay. The District Court noted that the jury found that "Arctic Cat would have laid off Voeltz, regardless of his disability." Id. Notwithstanding this observation, the court determined that Arctic Cat's ADA violation for failure to accommodate entitled Voeltz to an equitable remedy—reinstatement or front pay. Finding that reinstatement was "not practicable," id. at 21, the court ordered $74,626 in front-pay damages. We conclude that the District Court abused its discretion in doing so. See Ollie v. Titan Tire Corp., 336 F.3d 680, 687 (8th Cir. 2003) (standard of review).

Where "reinstatement is impractical or impossible," a district court may enter an order of front pay to fully compensate the successful plaintiff who has lost his job because of an ADA violation. Id. (quoting E.E.O.C. v. HBE Corp., 135 F.3d 543, 555 (8th Cir. 1998)). But "[i]n fashioning equitable relief, the district court . . . may not base its decision on factual findings that conflict with the jury's findings." Salitros v. Chrysler Corp., 306 F.3d 562, 573 (8th Cir. 2002). Here, as the District Court acknowledged, the jury found that Arctic Cat would have made the same employment decisions even if it had not considered Voeltz's MS. In these circumstances, where reinstatement was not just "impractical or impossible" but could not have been ordered as a matter of law because of the jury's findings that Voeltz would not have been working at Arctic Cat regardless of his disability, Voeltz is not entitled to front pay as an alternative to reinstatement.

-7-

In sum, the judgment of the District Court is vacated to the extent it awards actual damages and front-pay damages to Voeltz. The only money damages to which Voeltz may be entitled are nominal damages on the reasonable-accommodation verdict. We remand for entry of judgment consistent with this opinion. We leave to the District Court the matter of revising the award of attorney fees to more accurately reflect Voeltz's limited success on the merits. See Shrader v. OMC Aluminum Boat Group, Inc., 128 F.3d 1218, 1220–21 (8th Cir. 1997)

_____