# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

Nos. 04-1443/04-1704

_____

Anne Wedow, Kathleen Kline,     *

                               *

    Cross-Appellants/Appellees,     *

                               *     Appeal from the United States

    v.                            *     District Court for the

                               *     Western District of Missouri.

City of Kansas City, Missouri,     *

                               *     [PUBLISHED]

    Appellant/Cross-Appellee.     *

                               *

_____         *

                               *

Women in Fire Services, Inc.     *

                               *

    Amicus on Behalf of Cross-     *

    Appellants/Appellees.     *

                               *

_____

Submitted: January 13, 2005
Filed: March 24, 2006

_____

Before LOKEN, Chief Judge, HANSEN and ARNOLD, Circuit Judges.

_____

HANSEN, Circuit Judge.

      Anne Wedow and Kathleen Kline, both battalion chiefs with the Kansas City Fire Department, brought this employment discrimination suit against the City of

Kansas City, Missouri (City), asserting discriminatory treatment in clothing and facilities on the basis of their sex and also alleging retaliation. Ms. Kline and Ms. Wedow each prevailed in individual jury trials. The district court[1] entered judgment in their favor on the juries' verdicts but denied their requests for equitable relief. The City now appeals the district court's denial of its motions for judgment as a matter of law, and Ms. Wedow and Ms. Kline cross appeal the district court's denial of equitable relief. We affirm.

I.

When considering the denial of a motion for judgment as a matter of law, we review the district court's decision de novo, viewing the evidence in the light most favorable to the jury's verdict. Voeltz v. Arctic Cat, Inc., 406 F.3d 1047, 1050 (8th Cir. 2005). Ms. Wedow and Ms. Kline have been employed by the Kansas City, Missouri, Fire Department as firefighters since 1977. The City promoted them to the rank of battalion chiefs following their prior discrimination lawsuit against the Fire Department. See Kline v. City of Kansas City, Mo., Fire Dep't, 175 F.3d 660 (8th Cir. 1999) ("Kline I"), cert. denied, 528 U.S. 1155 (2000).

An understanding of certain aspects of the discrimination claims litigated in the first suit is necessary to this appeal. In Kline I, the plaintiffs sought damages for sex discrimination in their employment, a hostile work environment, and retaliation based upon acts occurring from September 1992 to July 1997. During the trial, the plaintiffs sought to introduce evidence that the Fire Department provided them with inadequate protective clothing and inadequate bathroom and shower facilities to support their claim of a hostile environment. The district court did not permit the evidence to be admitted, concluding that, although the charge before the Equal Employment

---

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

Opportunity Commission (EEOC) had alleged a hostile environment, the evidence concerning inadequate clothing and facilities had not been listed in the EEOC charge. Kline I, 175 F.3d at 668. Ms. Kline prevailed at trial on her hostile environment and retaliation claims and on part of her disparate treatment claim; Ms. Wedow did not prevail on any claims in Kline I.

On appeal in Kline I, we held that the district court erred by admitting only evidence recited in the EEOC complaint because all of the work circumstances were relevant to the hostile environment claim, including the evidence of inadequate clothing and facilities. Id. We concluded, nevertheless, that the error was harmless in that instance. Ms. Kline prevailed on the issue of liability with regard to her hostile environment claim in Kline I so the clothing and facilities evidence could only have made an impact on the issue of damages. We concluded that there was no harm because the clothing and facilities conditions "were manifestly less severe and pervasive than the ones for which Ms. Kline prevailed." Id. Thus, the excluded evidence likely would not have affected the nominal $1 damage award. Id. at 668-69. As to Ms. Wedow's hostile environment claim, we concluded that the district court properly granted summary judgment to the Fire Department because the clothing and facilities evidence offered was not so severe or pervasive so as to create an abusive working environment necessary to the hostile environment claim. Id. at 669.

Ms. Wedow and Ms. Kline filed new EEOC charges in 1997, alleging ongoing sex discrimination through the City's failure to provide them with adequately fitting protective clothing or adequate facilities (i.e., private bathrooms, shower facilities, or changing areas). They then filed the current lawsuit, alleging discriminatory treatment and retaliation on the basis of their sex,[2] in violation of Title VII of the Civil Rights

[2]The complaint also included claims of sexual harassment resulting in a hostile work environment, which the plaintiffs dismissed with prejudice before trial, and discrimination claims under the Missouri Human Rights Act, Mo. Rev. Stat. § 213.010-213.137, which the district court dismissed in a summary judgment order

Act of 1964, as amended by the 1991 Civil Rights Act, 42 U.S.C. § 2000e-2000e-17 (2000). This case proceeded to separate jury trials where each of the plaintiffs prevailed.

Viewed in the light most favorable to the juries' verdicts, the evidence in the trials showed the following. Firefighters are each issued two sets of personalized protective clothing called bunker gear, consisting of a coat, pants, boots, helmet, gloves, a tool belt, and a self-contained breathing apparatus. Two sets are necessary because if protective gear becomes wet or soiled with chemicals at one fire, there is a danger of injury from steam when the same gear must be worn at another fire that day. The protective clothing must fit properly to ensure that the body is protected from injury due to smoke, water, heat, gasoline, and chemicals and to ensure the mobility needed while fighting a fire. The City issued and required Ms. Wedow and Ms. Kline to wear ill-fitting male firefighting clothing, although female clothing and gear were available and management officials knew of sources from which female gear could be obtained. Because the protective clothing did not fit Ms. Wedow and Ms. Kline properly, they suffered injuries from fire and chemicals when the coats would not close properly, or too large hats and boots would fall off while fighting a fire. Ms. Wedow's and Ms. Kline's movements were cumbersome and restricted by pants that caused them to trip or prevented them from easily climbing ladders. Excess length in the fingers of gloves made it difficult to grip objects such as the fire hose. The City's failure to procure protective clothing tailored for women and its provision of only male-sized protective clothing to Ms. Wedow and Ms. Kline made their jobs more difficult and more hazardous than was necessary.

The evidence demonstrated that despite their complaints, no one in the Fire Department made any effort to provide Ms. Kline and Ms. Wedow with adequately fitting protective clothing from 1990 through October 1998. In October 1998, the Fire

---

prior to trial.

-4-

Department provided Ms. Kline with one set of female-sized protective clothing, although each male firefighter is given two sets of properly fitting clothing. In late 1998, Ms. Wedow received a female-sized pair of bunker pants and a male-sized coat; she never received a complete set of adequately fitting protective clothing during the relevant time period.

Ms. Kline and Ms. Wedow also complained of a lack of adequate restrooms, showers, and private changing facilities (referred to collectively as "facilities"). Showering at the station after fighting a fire is necessary to maintain good health when serving in 24-hour shifts. At a number of stations that Ms. Wedow and Ms. Kline visited on a daily basis as battalion chiefs, the restrooms were located in the male locker rooms with the male shower room, doors were not secure, males had the keys, and where female restrooms existed, they were unsanitary and often used as storage rooms. Food and water for the station's pet dog were kept in the women's room in two stations and sexually explicit magazines and a poster were kept in the female restroom in station 23. Most of the female restrooms that existed did not contain shower rooms and in some stations, the women's shower could be accessed only through the male bunkroom.

Department officials were aware of complaints about the facilities as early as 1993. From 1994 through 2000, the Fire Department submitted yearly budgets to the City requesting money for female locker room upgrades, and every year the City allocated money for this purpose, but the money was diverted to a whole-station upgrade at station 4, which already had a female restroom.

The evidence of retaliation revealed that from 1997 through 2000, Ms. Wedow and Ms. Kline were not provided opportunities to work in "shift designation" positions. These designations allow the designee to oversee particular subject matter functions that arise during the shift. They do not entitle a firefighter to any extra pay, but they do provide on-the-job experience that is critical to career advancement. Male

battalion chiefs and males of lesser rank than Ms. Wedow and Ms. Kline received these career-enhancing designations, while Ms. Kline and Ms. Wedow were denied the same opportunities. The evidence demonstrated that battalion chiefs and captains who had served in such designated capacities were promoted. Ms. Kline also complained that she was denied opportunities to work "out of class"–temporarily assuming the duties of higher ranked officials. Because this experience is good preparation for promotional tests, it also enhances the ability for career advancement.

A jury awarded Ms. Kline $40,000 on her claim of sex discrimination with regard to clothing and facilities and $10,000 on her retaliation claim for the City's failure to assign her additional duties as a Hazardous Materials Officer, Safety Officer, EMS Officer, and Shift Advisor, and for not permitting her to work out of class as Deputy Chief. A separate jury awarded Ms. Wedow $225,000 on her clothing and facilities discrimination claim and $60,000 on her retaliation claim for the City's failure to assign her additional duties as a Shift Hazardous Materials Officer, EMS Officer, or Safety Officer.

Subsequent to trial, Ms. Kline filed a motion for equitable relief, seeking an injunction ordering the City immediately to cure the gender-based disparities in facilities.[3] The district court denied relief, concluding that as Battalion Chief of District 105, she has access to either a female or unisex restroom with locks on the doors at each station in the district. The district court also found that the City now has a fifteen-year plan for renovating all of its stations, and that a court order requiring immediate action on certain facilities might disrupt the overall plan. Thus, the district court refused to award equitable or injunctive relief with regard to the facilities.

---

[3]Ms. Wedow joined the cross-appeal, but she is now retired so the requested equitable relief would not now apply to her.

The City appeals, arguing that the plaintiffs' claims are barred as a matter of law by res judicata, collateral estoppel, limitations, or the lack of an adverse employment action. The plaintiffs cross appeal the district court's denial of equitable relief.

## II.

Judgment as a matter of law is proper only "when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" Wilson v. Brinker Int'l, Inc., 382 F.3d 765, 769 (8th Cir. 2004) (quoting Fed. R. Civ. P. 50). As noted above, we review the district court's decision de novo, viewing the evidence in the light most favorable to the jury's verdict. Id. We "will not set aside a jury verdict unless there is a complete absence of probative facts to support the verdict." Id. (internal marks omitted). In other words, "[j]udgment as a matter of law is appropriate only when the record contains no proof beyond speculation to support the verdict." Id. at 770 (internal marks omitted).

### A. Res Judicata and Collateral Estoppel.

The City argues that Ms. Wedow's and Ms. Kline's claims of discriminatory treatment on the basis of clothing and facilities are barred as a matter of law by the doctrines of res judicata and collateral estoppel because the same claims were advanced, or could have been advanced, in Kline I. We respectfully disagree.

Res judicata, or claim preclusion, operates to preclude a party from relitigating the same cause of action. Lundquist v. Rice Mem'l Hosp., 238 F.3d 975, 977 (8th Cir. 2001). Claim preclusion applies when there is a prior judgment rendered by a court of competent jurisdiction, that prior judgment was final and on the merits, and it involved the same cause of action and the same parties or privies. Banks v. Int'l Union Electronic, Electrical, Tech., Salaried and Mach. Workers, 390 F.3d 1049, 1052 (8th Cir. 2004). Res judicata bars claims that were or could have been litigated in the

earlier proceeding, id., but it does not apply to claims that did not exist when the first suit was filed, Lundquist, 238 F.3d at 977.

The hostile work environment claim of Kline I and the disparate treatment claim of the present suit are not the same cause of action but are separate and distinct with regard to the relevant time frame for recovery. We held in Kline I that it was error to exclude the clothing and facilities evidence but that the error was harmless because the evidence offered was not severe enough to have altered the damage award on the hostile environment claim, which requires severe and pervasive harassing conduct. See 175 F.3d at 668. We considered the evidence solely for its relevance to a claim of hostile environment where recovery was limited to the period from 1992 through 1997.

In the present action, the plaintiffs brought a cause of action for intentional discrimination on the basis of sex through disparate treatment in the provision of protective clothing and facilities. Severe harassing conduct was not part of this disparate treatment claim as it had been on the hostile environment claim. While the evidence of inadequate clothing and facilities offered in Kline I was admissible as background evidence in the present suit, recovery for the present cause of action is limited to the period from February 1997 through May 2000. Thus, the district court correctly concluded that res judicata does not bar the present cause of action.

Collateral estoppel, or issue preclusion, precludes relitigation of identical issues of fact. See Liberty Mut. Ins. Co. v. FAG Bearings Corp., 335 F.3d 752, 758 (8th Cir. 2003) (citing Restatement (Second) of Judgments § 27 (1982)). The clothing and facilities issues were not litigated at trial in Kline I, but on appeal, we considered whether the facts proffered would have made a difference if admitted. We concluded that the facts offered in that case were not so severe that they would have altered the recovery on the hostile environment claim, which was limited to the period from 1992 through 1997. Here, the same type of evidence was offered to demonstrate intentional

discrimination on the basis of disparate treatment from 1997 through 2000. Again, while the same facts were admissible as background evidence, the background facts do not preclude litigation of the clothing and facilities issue in this case where recovery was limited to acts of disparate treatment occurring in a later time frame than the facts of Kline I. The district court correctly concluded that collateral estoppel does not apply.

## B. Statute of Limitations.

The City sought judgment as a matter of law on the ground that the clothing and facilities disparate treatment claims are barred by the 300-day limitation for filing Title VII charges with the EEOC, see 42 U.S.C. § 2000e-5(e)(1), because Ms. Kline and Ms. Wedow were aware of the claims for clothing and facilities since at least January 1990, and they did not file their EEOC charge until November 1997. The district court denied the City's motion, invoking the continuing violation theory but limiting recovery to the period from February 1997 (300 days prior to when the plaintiffs filed their EEOC complaints) through May 2000. The City argues on appeal that the continuing violation theory does not apply to preserve these claims.

Since the district court's ruling in June of 2001, the Supreme Court has addressed the application of the continuing violation theory in the context of a disparate treatment claim. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). The Court clarified that the continuing violation doctrine is not available to toll the limitations or revive a claim involving a separate act of discrimination that occurred beyond the 300-day limitation. Id. at 113-14. "[D]iscrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." Id. at 112. Prior acts may be used as background evidence in support of a timely claim. Id. at 113. We have since acknowledged that in the disparate treatment context, "'[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire' are 'not actionable if time barred, even when they are related to acts

alleged in timely filed charges.'" Tademe v. Saint Cloud State Univ., 328 F.3d 982, 987 (8th Cir. 2003) (quoting Morgan, 536 U.S. at 114) (alteration in original). "In other words, each occurrence starts a new clock for purposes of filing charges related to that act, and an employee must file charges within 180 or 300 days (whichever is applicable) of a discrete discriminatory action." Id. at 987-88.

While the district court used the term "continuing violation" theory to explain why the plaintiffs' claims were timely, it is clear that the district court did not use this theory to hold the City liable for acts falling outside of the 300-day window. Instead, the district court clearly stated that the plaintiffs could pursue their disparate treatment claims with regard to clothing and facilities "so long as the conditions they complain about existed within the limitation period," and that if successful at trial, the plaintiffs "will be limited to recovering damages from within the limitation period." (Appellees' Add. at A-9 (Dist. Ct. Order denying in part the defendant's motion for summary judgment on limitations grounds).)

The City argues that the plaintiffs' clothing and facilities complaints stem from their initial job assignments in 1977 and are simply the inevitable consequence of an earlier allegedly discriminatory act, a completed event in itself, and are not separate discriminatory acts within the limitations period, citing Del. State Coll. v. Ricks, 449 U.S. 250, 257-58 (1980) (holding that a discriminatory event that can be placed at a specific point in time, such as a decision to deny tenure, does not "continue" until the actual termination of employment but was fixed at the moment the plaintiff was denied tenure on allegedly discriminatory grounds).

The City's reliance on Ricks is misplaced. In Ricks, the Court considered the termination of the employment contract to be the "delayed, but inevitable, consequence" of the decision to deny tenure, and as such, the termination at the expiration of the contract was not a separate discriminatory act in itself. Id. We find the present case to be more akin to the line of cases stemming from Bazemore v.

Friday, 478 U.S. 385, 395 (1985) (holding that each week's paycheck that delivers less on a discriminatory basis is a separate Title VII violation). Adequately fitting firefighting clothing and sanitary and private facilities are essential to the job of a firefighter, and inadequacies in these areas compromise job efficiency as well as safety. We conclude that each time a firefighter is required to don inadequately fitting protective clothing to combat a fire or to serve a 24-hour shift without adequate restroom and shower facilities due to discrimination on account of sex, a separate Title VII violation occurs. Thus, separate acts of discrimination occurred within the 300-day limit in this case. The district court correctly permitted acts occurring outside the 300-day window to be admitted as relevant to discriminatory intent and correctly limited recovery to acts occurring within the limitations period. See Morgan, 536 U.S. at 113-14.

## C. Disparate Treatment.

The City argues that it is entitled to judgment as a matter of law on the claim of disparate treatment in protective clothing and facilities because the plaintiffs failed to demonstrate that they suffered an adverse employment action. The cases here proceeded to separate juries with instructions that they determine whether the City had treated the plaintiffs differently and adversely because of their sex in the provision of protective clothing and facilities. "An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." Sallis v. Univ. of Minn., 408 F.3d 470, 476 (8th Cir. 2005). "Mere inconvenience without any decrease in title, salary, or benefits" or that results only in minor changes in working conditions does not meet this standard. Id.

We cannot say as a matter of law that being required to work as a firefighter with inadequate protective clothing and inadequate restroom and shower facilities is a mere inconvenience. Title VII makes it unlawful to discriminate on the basis of sex with regard to the "terms, conditions, or privileges of employment" and prohibits an

employer from depriving "any individual of employment opportunities or otherwise adversely affect[ing] his status as an employee" on the basis of sex. 42 U.S.C. § 2000e-2(a)(2). The record amply demonstrates that the terms and conditions of a female firefighter's employment are affected by a lack of adequate protective clothing and private, sanitary shower and restroom facilities, because these conditions jeopardize her ability to perform the core functions of her job in a safe and efficient manner. The danger inherent in the job of a firefighter compounded by the need to move and work efficiently in those dangerous circumstances, to quickly change in and out of gear, to shower for health reasons following a fire, and the need to serve in 24-hour shifts, combine to make the provision of adequate protective clothing and facilities integral terms and conditions of employment for a firefighter. Thus, there was sufficient evidence to support the juries' findings that the failure to furnish the necessary correct gear and facilities on the basis of sex was an adverse employment action prohibited by Title VII.

The City also argues that the plaintiffs were not subjected to disparate treatment on the basis of their sex because both sexes used the same bathrooms and because tailoring of inadequately fitting clothing was available for both men and women. The jury found otherwise, and its conclusion is supported by the evidence. See Okruhlik v. Univ. of Ark., 395 F.3d 872, 878 (8th Cir. 2005) (noting that we may not make credibility determinations or weigh the evidence when reviewing the grant or denial of a motion for judgment as a matter of law). The record includes evidence that the same male-sized clothing was provided to men and women, but that it did not fit the women, and that the vendors used by the City did not sell protective clothing likely to fit a woman and purchases could only be made from the City's authorized vendors. The plaintiffs asserted that the City and its vendors did not follow the tailoring policy because it was too expensive. The City did not respond to Ms. Kline's and Ms. Wedow's complaints about the fit of the clothing for five years after learning that gender-appropriate clothing was available from other vendors. This evidence supports a finding of disparate treatment. Additionally, the juries were free to conclude that the

City discriminated on the basis of sex either by requiring men and women in this male-dominated workplace to share the men's restroom and shower or by providing substantially inferior facilities for the women.

## D. Retaliation

The City argues that it was entitled to judgment as a matter of law on the retaliation claims because they were not asserted in the plaintiffs' November 1997 EEOC charges. The 1997 EEOC filings predate the retaliatory conduct that allegedly occurred between 1998 and 2000, and the plaintiffs did not amend their November 1997 EEOC charges to include allegations of retaliation which occurred during the 1998-2000 time frame. Thus, the City asserts that the plaintiffs' retaliation claims are barred for the failure to exhaust administrative remedies.

Where the alleged discriminatory or retaliatory conduct has occurred subsequent to a timely filed EEOC charge, we have consistently held that "[a] plaintiff will be deemed to have exhausted administrative remedies if the allegations of the judicial complaint are like or reasonably related to the administrative charges that were timely brought." Anderson v. Block, 807 F.2d 145, 148 (8th Cir. 1986) (holding that the district court should have considered whether a subsequent termination was sufficiently related to the timely filed administrative charges of discriminatory suspensions "to come within the rule that administrative remedies will be deemed exhausted with regard to all incidents fairly encompassed within the scope of the administrative charges on which a court action may properly be brought"). We have, however, considerably narrowed our view of what is "like or reasonably related" to the originally filed EEOC allegations. While at one time, this judicial exception to the exhaustion doctrine permitted a finding that a subsequent retaliation claim growing out of an EEOC age discrimination complaint was sufficiently related to be within the scope of the lawsuit, see Wentz v. Md. Cas. Co., 869 F.2d 1153, 1154 (8th Cir. 1989), we have subsequently recognized that "retaliation claims are not reasonably related

to underlying discrimination claims." Duncan v. Delta Consol. Indus., Inc., 371 F.3d 1020, 1025 (8th Cir. 2004) (internal marks omitted). See also Roark v. City of Hazen, Ark., 189 F.3d 758, 761 (8th Cir. 1999). Further informing our use of this doctrine, the Supreme Court has indicated that a discrete act of discrimination constitutes a separate actionable employment practice, and each discrete act starts a new clock for filing charges based upon it. Morgan, 536 U.S. at 113-14. In accord with this principle, we have held that a refusal to hire is a discrete employment action, and refusals to hire that occurred subsequent to the timely filed EEOC charge "are not like or reasonably related to the claims in [the] administrative charge" because the timely filed administrative charge asserted only a single incident of refusal to hire on a specific date. Parisi v. Boeing Co., 400 F.3d 583, 586 (8th Cir. 2005). See also Shelton v. Boeing Co., 399 F.3d 909, 912-13 (8th Cir. 2005) (holding subsequent refusals to hire were not like or reasonably related where the EEOC charge identified a specific time period in which the alleged conduct occurred, and that time period ended four months before the date on which the EEOC questionnaire was submitted).

In light of the Supreme Court's clear rejection in Morgan of the continuing violation theory as a means to toll the limitation period for discrete acts of discrimination that occurred prior to the limitation period for a timely filed charge, some courts have concluded that the rule applies with equal force to discrete acts of discrimination that occur subsequent to a timely filed EEOC charge. See Martinez v. Potter, 347 F.3d 1208, 1210-11 (10th Cir. 2003); Romero-Ostolaza v. Ridge, 370 F. Supp. 2d 139, 148-49 (D.D.C. 2005); Velikonja v. Mueller, 315 F. Supp. 2d 66, 74 (D.D.C. 2004). These courts require a new or amended EEOC charge for each subsequent alleged incident of retaliation or discrimination, regardless of whether the subsequent acts are related to the allegations of the initial timely filed EEOC charge. See Annett v. Univ. of Kan., 371 F.3d 1233, 1238 (10th Cir. 2004). But see Delisle v. Brimfield Township Police Dep't, 94 F.App. 247, 252-54 (6th Cir. 2004) (unpublished) (distinguishing Morgan as involving a limitation on recovering for discriminatory actions that are time-barred and allowing a claim for retaliation that

"can be reasonably expected to grow out of the EEOC charge" (internal marks omitted)).

While our court has narrowed its view of what subsequent acts are sufficiently related to be within the scope of the properly filed administrative charges, we have not wholly abandoned the theory that reasonably related subsequent acts may be considered exhausted. See, e.g., Parisi, 400 F.3d at 585-86 (stating the theory though finding the subsequent acts to be unrelated); Shelton, 399 F.3d at 912-13 (same). The Supreme Court in Morgan reaffirmed the view that the "time period for filing a charge is subject to equitable doctrines such as tolling or estoppel." 536 U.S. at 113. Our court has recently stated that "'[t]he proper exhaustion of administrative remedies gives the plaintiff a green light to bring [his or] her employment-discrimination claim, along with allegations that are "like or reasonably related" to that claim, in federal court.'" Parisi, 400 F.3d at 585 (quoting Shannon v. Ford Motor Co., 72 F.3d 678, 684 (8th Cir. 1996), discussing exhaustion under Title VII). In another recent post-Morgan case we said: "We do not require that subsequently-filed lawsuits mirror the administrative charges" as long as "the sweep of any subsequent judicial complaint" is no broader than "the scope of the EEOC investigation which could reasonably be expected to grow out of the charge" filed in the EEOC complaint. Duncan, 371 F.3d at 1025 (internal marks omitted). Guided by the principles set forth in Morgan, we continue to adhere to a narrow reading of this exhaustion exception, but we decline, on the facts before us, to abandon it in toto where the subsequent retaliatory acts were of a like kind to the retaliatory acts alleged in the EEOC charge, which were specified to be of an ongoing and continuing nature.

In the present case, the November 1997 EEOC charges clearly alleged that retaliation had occurred and was continuing to occur throughout the plaintiffs' ongoing employment. (See Appellant's App. at 180 & 270 (each charge stating that the retaliation "is ongoing and continues as I proceed . . . and continue working").) Ms. Kline checked a box in the November 1997 EEOC charge indicating she was claiming

retaliation, and she specifically described that since June 30, 1997, she continued to be denied opportunities to work out-of-class and was being denied opportunities for promotion. Ms. Wedow's November 1997 EEOC charge specifically asserted that she had been retaliated against by the denial of opportunities to work in tactical shift designation assignments, such as Safety Officer or Interior Sector Officer, which provide invaluable experience, and that this had been ongoing since March of 1996. The claims in the judicial complaint and at trial of the same type of ongoing retaliation continuing from 1998 through 2000 were not based on separate, distinct, or unrelated theories of retaliatory discrimination or action. The City continued to deny the plaintiffs the same type of work experiences and opportunities as alleged in the EEOC charges by not permitting the plaintiffs to serve in additional shift designations or, in Ms. Kline's case, not permitting her to work out-of-class for any significant period of time subsequent to the EEOC charges. The claims of retaliation from 1998 through 2000 alleged in the complaint include the same type of ongoing retaliation alleged in the timely filed administrative charges. In this context, "[t]o force a plaintiff to file a new administrative charge with each continuing incident of discrimination would create needless procedural barriers." Anderson, 807 F.2d at 148. Because the administrative charges stated that these specific acts of retaliation were "ongoing and continu[ing]" (Appellants' App. at 180 & 270), we conclude that the subsequent acts of identical character are "like or reasonably related to" the administrative charges that were timely brought. Parisi, 400 F.3d at 585.

In sum, a reasonable EEOC investigation of alleged "ongoing and continu[ing]" retaliation in this case would certainly have focused on whether or not the retaliation alleged was in fact existent at the time of the filing of the charges and if it did indeed continue to exist at the time of the investigation. Unlike allegations of a discrete act of discrimination that occurred in the past and outside of the limitations period or that occurred subsequently but were unrelated to the scope of the EEOC charges, the allegations in the November 1997 EEOC charges filed in this case spoke of acts occurring in the present and specifically alleged future implications as well. Acts of

retaliation contained in EEOC charges that are alleged to be "ongoing and continu[ing]" are not closed-ended, as were the EEOC charges in Parisi, 400 F.3d at 585 (complaining of a single incident that occurred on a specific day), and Shelton, 399 F.3d at 912-13 (complaining of acts within a specific limited time period).

On the merits of the retaliation claims, the City argues that the verdicts are against the weight of the evidence because the plaintiffs suffered no adverse employment action and failed to demonstrate causation. Once there has been a trial on the merits of a retaliation claim, the only question is "whether the plaintiff produced sufficient evidence to allow the jury reasonably to find that the defendant intentionally retaliated against the plaintiff because of statutorily-protected conduct." EEOC v. Kohler Co., 335 F.3d 766, 773 (8th Cir. 2003). We "simply study the record with a view to determining whether the evidence is sufficient to support whatever finding was made at trial." Id. at 773 n.7 (8th Cir. 2003) (internal marks omitted).

Construing every inference from the evidence in favor of the juries' verdicts, we conclude that although Ms. Kline and Ms. Wedow suffered no loss in pay or rank from the City's failure to assign them to special shift duties and, in Ms. Kline's case the failure to permit her to work out-of-class as a deputy chief, the jury was free to believe the plaintiffs' assertions and their supporting circumstantial evidence that these failures produced a material employment disadvantage. See Spears v. Mo. Dep't of Corr. & Human Res., 210 F.3d 850, 853 (8th Cir. 2000) (noting that "[a]n adverse employment action is a tangible change in working conditions that produces a material employment disadvantage"). The denial of special shift designations and an opportunity to work out-of-class, when those designations and opportunities were provided to males of both equal and lesser rank, deprived the plaintiffs of essential on-the-job training, leaving them to feel less competent when performing their job functions and depriving them of beneficial prior experience when seeking promotions. See id. (stating an adverse employment action exists where "changes in employment that significantly affect an employee's future career prospects").

-17-

The City asserts that there is no evidence of a causal connection between the alleged retaliatory actions and the prior complaints of discrimination. We again disagree. "An employee may prove causation with circumstantial evidence that justifies an inference of a retaliatory motive." Pope v. ESA Servs., Inc., 406 F.3d 1001, 1010 (8th Cir. 2005) (internal marks omitted). While temporal proximity alone generally will not suffice to create a genuine issue of fact on a retaliation claim, see Tatum v. City of Berkeley, 408 F.3d 543, 555 (8th Cir. 2005), when reviewing a jury verdict, the timing issue is evaluated along with the other evidence in the record to determine whether the evidence was sufficient to support the verdict, Kohler, 335 F.3d at 773 n.7. "[T]emporal proximity rises in significance the closer the adverse activity occurs to the protected activity." Id. at 774. In this case, all of the alleged retaliation occurred after the trial and appeal of Ms. Kline and Ms. Wedow's first discrimination lawsuit, after the district court had ordered the City to promote them to battalion chiefs, and after the filing of their most recent EEOC complaints of further discrimination. Circumstantial evidence indicated that the City promoted the plaintiffs in response to the prior suit, yet then failed to extend to them all of the opportunities attendant to their rank. While they were given a few token shift designations (none at all in the areas on which they prevailed at trial), the plaintiffs in all aspects of these designations were treated less favorably than men with the same and even lower rank, and the juries could properly infer a retaliatory motive where the City offered no legitimate nondiscriminatory reason why the plaintiffs were not selected to serve in these positions.

The City asserts that there was no evidence that the person in charge of making the shift designations knew about their protected activities. On the contrary, there was evidence that Chief Weixeldorfer was at all relevant times a deputy chief and that the deputy chief appoints the shift advisor, a position to which Ms. Wedow was never designated. He testified that he was aware that the opportunity to work in shift designation assignments provided beneficial on-the-job training and interactions with higher-ranked employees. Further, he was aware of the prior lawsuit as well as the

1997 EEOC charges, and he participated in meetings in which the EEOC charges were discussed.

Finally, the City asserts that Ms. Kline should not be permitted to recover on her claim of retaliation regarding the City's failure to permit her to work out-of-class as a deputy chief, because the district court dismissed this claim with prejudice prior to trial. This assertion is without merit. The district court clearly held in its ruling on the summary judgment motion that Ms. Kline had dismissed all disparate treatment claims regarding working out-of-class, regardless of how they may be characterized, but the court specifically preserved her right to claim retaliation on this basis. (Appellees' Add. at A-24, 25.)

## E. Equitable Relief.

Ms. Kline cross-appeals the district court's denial of her request for equitable relief in which she sought an injunction requiring an immediate cure for the facilities violations. We review for an abuse of discretion the district court's grant or denial of equitable relief under Title VII. Gumbhir v. Curators of the Univ. of Mo., 157 F.3d 1141, 1144 (8th Cir. 1998), cert. denied, 526 U.S. 1005 (1999); see also Franks v. Bowman Transp. Co., 424 U.S. 747, 764 (1976) (noting that federal courts have "wide discretion" "to fashion the most complete relief possible" because Title VII is intended to make whole the victims of discrimination (internal marks omitted)). "An abuse of discretion occurs if the district court rests its conclusion on clearly erroneous factual findings or if its decision relies on erroneous legal conclusions." Layton v. Elder, 143 F.3d 469, 472 (8th Cir. 1998) (internal marks omitted). Once a party has demonstrated success on the merits of a discrimination claim, the court must balance three factors to determine if injunctive relief is appropriate: (1) the threat of irreparable harm to the moving party, (2) the harm to be suffered by the nonmoving party if the court grants the injunction, and (3) the public interest at stake. Id.

The district court balanced the City's efforts in having "dedicated a great deal of time and money establishing a logical and rational plan to remodel the stations in a sensible sequence" (Appellees' Add. at D-4) against Ms. Kline's entitlement to nondiscriminatory facilities in her workplace. The court reviewed the existing conditions at the five fire stations in Ms. Kline's district, where she is now the battalion chief, and concluded that each one has an accessible female or unisex restroom with locks on the doors. While inadequate facilities do persist, the discriminatory impact was dissipated in the district court's judgment by finding that "the City now has a blueprint for upgrading and replacing stations over a fifteen-year time frame." (Id. at D-5.) Ms. Kline's personal need for immediate facilities upgrades in the facilities where she works must be balanced against the need of the City and the taxpaying public to renovate the facilities throughout the entire Fire Department pursuant to a logical overall plan, rather than through piecemeal construction. Ms. Kline is understandably distrustful because the City has not followed through with plans to upgrade women's facilities in the past, but no overarching, long-range renovation plan existed in the past. We recognize that this is a complicated issue, but we cannot say with assurance that the experienced district court judge who heard all of the evidence and observed the witnesses firsthand abused his discretion in denying equitable relief when the City has now demonstrated a long-range plan for remedying the facilities violations throughout the entire department.

III.

Accordingly, we affirm the judgment of the district court.

_____