# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 11-2570

———————

Mischelle Richter,                        *
                                          *
          Plaintiff – Appellant,          *
                                          *   Appeal from the United States
     v.                                   *   District Court for the
                                          *   Western District of Missouri.
Advance Auto Parts, Inc.,                 *
                                          *   [PUBLISHED]
          Defendant – Appellee.           *

———————

Submitted: January 11, 2012
Filed: August 1, 2012

———————

Before BYE, SMITH, and COLLOTON, Circuit Judges.

———————

PER CURIAM.

Mischelle Richter appeals the district court's order dismissing her retaliation claims under Title VII and the Missouri Human Rights Act for failure to exhaust administrative remedies. She also appeals the dismissal of her wrongful discharge claim under Missouri law for failure to state a claim upon which relief may be granted. On appeal, Richter argues her retaliation claims are excepted from the administrative exhaustion requirement and asserts her complaint alleged sufficient facts to state a claim for wrongful discharge under Missouri law. We affirm the district court's dismissal of the retaliation claims, but reverse and remand for further proceedings on the state-law wrongful discharge claim.

I.

Richter was employed as a store manager by Advance Auto Parts, Inc., from 1999 until August 25, 2009. T.C. Hulett, who is an African-American male, served as Richter's direct supervisor. Beginning in early 2009 and continuing into August 2009, Richter reported to Hulett on several occasions that fellow employees had engaged in misconduct. The alleged transgressions included abuse of the employee discount program, failure to follow the company's sick leave policy, and theft. On August 14, 2009, a few days after Richter reported that an employee had committed theft, Hulett informed Richter she was being removed from the store manager position for failure to make timely bank deposits on four occasions. Hulett told Richter she could continue her employment with the company, but had one week to apply for a different position. The new position involved different responsibilities and offered lower pay.

On August 18, 2009, Richter filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that she suffered an adverse employment action because of her race (white) and her sex (female). A complaint filed with the EEOC is also "deemed filed" with the Missouri Commission on Human Rights ("MCHR"). Mo. Rev. Stat. § 213.075.2. On the forms, Richter checked the boxes for "race" and "sex," but did not check the "retaliation" box. The narrative portion of Richter's charge asserted that Advance Auto Parts was motivated by race and sex when it removed her from the store manager position on August 14, 2009. The EEOC eventually dismissed the charge and notified Richter that she had ninety days to file a private lawsuit against the employer in federal court.

Richter then filed suit in the district court against Advance Auto Parts. Her complaint, however, did not allege discrimination based on race or sex, in violation of 42 U.S.C. § 2000e-2(a). Instead, Richter alleged that Advance Auto discriminated against her in violation of 42 U.S.C. § 2000e-3, the anti-retaliation provision of Title

VII, which forbids discrimination against an employee for making a charge in an enforcement proceeding. She also alleged that Advance Auto's conduct violated the anti-retaliation provision of the Missouri Human Rights Act ("MHRA"). *See* Mo. Rev. Stat. § 213.070.2. Richter asserted, *inter alia*, that she informed a regional vice president of Advance Auto on August 23, 2009, about the charge that she had filed on August 18, and that Advance Auto terminated her employment on August 25, 2009, "in direct retaliation for her filing a good faith complaint with the EEOC and [MCHR] for racial discrimination." The complaint also alleged that Advance Auto committed a wrongful discharge under Missouri law, because the termination was motivated by Richter's reports of employee misconduct.

The district court dismissed the complaint. The court concluded that Richter failed to exhaust her administrative remedies as required by Title VII and the MHRA, and dismissed the retaliation claims on that basis. The court further ruled that Richter failed to state a claim for wrongful discharge, reasoning that "the statutes and public policy invoked by Richter . . . are insufficient to displace the unquestioned preference for at-will employment in the State of Missouri." Richter appealed.

II.

We review *de novo* the district court's grant of a motion to dismiss, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the nonmoving party. *See Palmer v. Ill. Farmers Ins. Co.*, 666 F.3d 1081, 1083 (8th Cir. 2012); *see also* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## A.

On appeal, Richter first argues the district court erred in dismissing her Title VII and MHRA retaliation claims for failure to exhaust administrative remedies. Richter contends that she may proceed with her retaliation claims in federal court, despite filing no charge about these claims with the EEOC or the MCHR, because "claims relating to direct retaliation for filing an original EEOC complaint are excepted from exhaustion requirements." Appellant's Br. 15 (capitalization omitted).

We consider the Title VII claim first. Title VII requires that before a plaintiff can bring suit in court to allege unlawful discrimination, she must file a timely charge with the EEOC or a state or local agency with authority to seek relief. 42 U.S.C. § 2000e-5(e)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974); *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994). Congress set up an elaborate administrative procedure, implemented through the EEOC, that is designed "to assist in the investigation of claims of . . . discrimination in the workplace and to work towards the resolution of these claims through conciliation rather than litigation." *Patterson v. McLean Credit Union*, 491 U.S. 164, 180-81 (1989), *superseded by statute on other grounds*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071. The text of the statute on exhaustion provides:

> A charge under this section *shall be filed* within one hundred and eighty days *after the alleged unlawful employment practice occurred* and notice of the charge (including the date, place and circumstances of *the alleged unlawful employment practice*) shall be served upon the person against whom such charge is made within ten days thereafter.

42 U.S.C. § 2000e-5(e)(1) (emphases added). If the agency dismisses the charge and notifies the complainant of her right to sue, then the complainant has ninety days to bring a civil action in federal court. *Id.* § 2000e-5(f)(1).

-4-

The object of the exhaustion requirement is "the alleged unlawful employment practice." The Supreme Court in *Morgan* explained that the term "practice" in this phrase does not connote "an ongoing violation that can endure or recur over a period of time." 536 U.S. at 110-11. Rather, other subsections of Title VII define the sorts of actions that qualify as "unlawful employment practices," and include among such practices "numerous discrete acts." *Id.* at 111. The Court reasoned that the term "practice" does not convert "related discrete acts into a single unlawful practice for the purposes of timely filing." *Id.* "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114. The Tenth Circuit explained that *Morgan* thus "abrogates the continuing violation doctrine as previously applied to claims of discriminatory or retaliatory actions by employers, and replaces it with the teaching that each discrete incident of such treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted." *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003).

We reject Richter's contention that retaliation claims arising from a charge filed with the EEOC are excepted from the statutory exhaustion requirement. Title VII requires that a complainant must file a charge with the EEOC within 180 days "after *the* alleged unlawful employment practice occurred," and give notice to the employer of the circumstances of "*the* alleged unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1) (emphases added). The use of the definite article shows that the complainant must file a charge with respect to each alleged unlawful employment practice. In her EEOC charge, Richter alleged discrimination based on race and sex that occurred on August 14, 2009. In the district court, she alleged discrimination for making a charge (*i.e.*, retaliation) that occurred on August 25, 2009. These are two discrete acts of alleged discrimination—one in violation of 42 U.S.C. § 2000e-2(a), one in violation of § 2000e-3(a). Each discrete act is a different unlawful employment practice for which a separate charge is required. *Morgan*, 536 U.S. at 114. Richter

failed to exhaust the retaliation claim, and the district court correctly dismissed the claim on that basis.

Richter resists this conclusion by invoking decisions that say a plaintiff need not file an administrative charge with respect to claims that are "like or reasonably related to" an alleged unlawful unemployment practice that the plaintiff did properly exhaust. *See, e.g.*, *Anderson v. Block*, 807 F.2d 145, 148 (8th Cir. 1986). She contends that because her retaliation claim is "like or reasonably related" to the claim of discrimination based on race and sex that she presented to the EEOC, nothing more was required to exhaust her retaliation claim.

This notion found favor with our court for a time. In *Wentz v. Maryland Casualty Co.*, 869 F.2d 1153 (8th Cir. 1989), the court considered a complaint that alleged unlawful retaliation under the Age Discrimination and Employment Act. The plaintiff filed a charge with the EEOC alleging age discrimination by his employer. The next day, the employer terminated him. The plaintiff did not file another charge with the EEOC alleging unlawful retaliation, but filed an action in federal court that pleaded a retaliation claim. In considering whether the plaintiff properly exhausted his retaliation claim, this court stated that allegations in a judicial complaint are "cognizable" if the claims filed in court are "like or reasonably related to" charges that were timely filed with the EEOC. *Id.* at 1154. *Wentz* held that although the plaintiff did not include a retaliation claim in the charge that he filed with the EEOC, his claim for unlawful retaliation was "properly before this court," because it "grew out of the discrimination charge he filed with the EEOC." *Id.*

After *Morgan*, however, this court disavowed *Wentz*. In *Wedow v. City of Kansas City, Missouri*, 442 F.3d 661 (8th Cir. 2006), this court characterized the "like or reasonably related to" analysis of *Wentz* as a "judicial exception to the exhaustion doctrine," and explained that the court has "considerably narrowed [its] view of what

is 'like or reasonably related' to the originally filed EEOC allegations." *Id.* at 672-73. The court made clear that *Wentz* no longer governed exhaustion analysis:

> While at one time, this judicial exception to the exhaustion doctrine permitted a finding that a subsequent retaliation claim growing out of an EEOC age discrimination complaint was sufficiently related to be within the scope of the lawsuit, *see Wentz v. Md. Cas. Co.*, 869 F.2d 1153, 1154 (8th Cir. 1989), we have subsequently recognized that "retaliation claims are not reasonably related to underlying discrimination claims."

*Wedow*, 442 F.3d at 672-73 (quoting *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1025 (8th Cir. 2004)). *Wedow*'s disavowal of *Wentz* is fully consistent with *Morgan* and the text of § 2000e-(5)(e)(1).[1]

The overriding message of *Morgan* was to follow statutory text. "[S]trict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." 536 U.S. at 108 (internal quotation omitted). Here, as in *Morgan*, "our most salient source for guidance is the statutory text." *Id.* at 109. We recognize that *Morgan* concerned discrete acts of an employer that occurred *prior* to the filing of an EEOC charge, rather than discrete acts

---

[1] *Wedow* held that retaliation claims in that case were properly exhausted only because the plaintiffs, in their November 1997 EEOC charges, did "clearly allege[] that retaliation had occurred and was continuing to occur throughout the plaintiffs' ongoing employment." 442 F.3d at 674. Because "[t]he claims of retaliation from 1998 through 2000 alleged in the complaint include the same type of ongoing retaliation alleged in the timely filed administrative charges," the court thought it was unnecessary for the complainants to file a new administrative charge with respect to each continuing incident of retaliation. *Id.* The narrow holding of *Wedow* lends no support to Richter's claim. Unlike the plaintiffs in *Wedow*, Richter never alleged *any* retaliation in her charge filed with the EEOC. And the EEOC's correspondence to Richter considered only claims of discrimination based on race and sex, with no mention of alleged retaliation.

of an employer that occurred thereafter, but the meaning of the phrase "unlawful employment practice" does not vary based on the timing of the alleged unlawful acts. The term "practice" no more subsumes multiple discrete acts when one of those acts occurs after the filing of an EEOC charge than it does when all acts occur before the charge is filed. As the Tenth Circuit recognized, the rule of *Morgan* "is equally applicable . . . to discrete claims based on incidents occurring *after* the filing of Plaintiff's EEO complaint." *Martinez*, 347 F.3d at 1210-11. *But see Delisle v. Brimfield Twp. Police Dep't*, 94 F. App'x 247, 253-54 (6th Cir. 2004) (unpublished) (divided panel holding that a plaintiff could proceed with three retaliation claims, although only two were presented to the EEOC).[2]

The partial dissent relies on "policy considerations" to support a rule that would except post-charge retaliation claims from the statutory exhaustion requirement. These considerations include the view that exhaustion of such claims is a "needless procedural barrier," and concern that a plaintiff who experiences alleged retaliation will be reluctant to file a separate charge with the EEOC. *Post*, at 19. But these points cannot override the text of the statute and the textual analysis of *Morgan*. And there are countervailing policy considerations as well. Exempting retaliation claims from the administrative framework established by Congress could frustrate the

---

[2]Several authorities cited by the partial dissent are inapposite. The Ninth Circuit in *Lyons v. England*, 307 F.3d 1092, 1104-05 (9th Cir. 2002), simply continued to apply pre-*Morgan* circuit precedent on a "like or reasonably related to" rule without addressing the impact of *Morgan*. The unpublished opinion of the Fifth Circuit in *Eberle v. Gonzales*, 240 F. App'x 622, 628 (5th Cir. 2007), cites *Morgan* only on a different issue, and *Gupta v. East Texas State University*, 654 F.2d 411, 414 (5th Cir. 1981), predates *Morgan* by more than twenty years. The Fourth Circuit in *Jones v. Calvert Group, Ltd.*, 551 F.3d 297 (4th Cir. 2009), did not analyze the exhaustion question anew, but held only that *Morgan* had not "overruled" binding circuit precedent, because it did not directly address "the extent to which an EEOC charge satisfies exhaustion requirements for claims of related, post-charge events." *Id.* at 303.

conciliation process, which we have called "central to Title VII's statutory scheme," *Williams*, 21 F.3d at 222. *See Romero-Ostolaza v. Ridge*, 370 F. Supp. 2d 139, 149 (D.D.C. 2005). While the EEOC apparently has represented elsewhere that retaliation for filing a charge of discrimination "likely" would be uncovered in the course of a reasonable EEOC investigation, *Clockedile v. N.H. Dep't of Corr.*, 245 F.3d 1, 4 (1st Cir. 2001), the agency's correspondence in this case made no mention of alleged retaliation and framed the charge solely in terms of alleged discrimination based on race and sex. J.A. 58-60. The EEOC evidently never considered whether Richter has a meritorious claim of unlawful retaliation, and never initiated any conciliation process on that matter with the employer. Unconvinced by the dissent's policy arguments, we conclude that federal law required exhaustion of Richter's Title VII retaliation claim.

Richter also appeals the dismissal of her MHRA retaliation claim. Although the parties do not address the state-law claim separately, we must consider how the Supreme Court of Missouri would rule in this situation.

Under the MHRA, a complainant must file an administrative complaint that "set[s] forth the particulars" of "the unlawful discriminatory practice." Mo. Rev. Stat. § 213.075.1. Discrimination based on race or sex is an unlawful employment practice under Mo. Rev. Stat. § 213.055.1(1)(a). Retaliation for filing a charge of discrimination is an unlawful employment practice under a different section, Mo. Rev. Stat. § 213.070(2). The filing of an administrative complaint "is a prerequisite to seeking judicial relief." *Igoe v. Dep't of Labor & Indus. Relations*, 152 S.W.3d 284, 287 (Mo. 2005); *see* Mo. Rev. Stat. § 213.111.

The Missouri Court of Appeals, relying on pre-*Morgan* precedent of this court, has held that "administrative remedies are deemed exhausted as to all incidents of discrimination that are like or reasonably related to the allegations of the administrative charge." *Alhalabi v. Mo. Dep't of Natural Res.*, 300 S.W.3d 518, 525

(Mo. Ct. App. 2009) (citing *Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 671 (8th Cir. 1994)). The Supreme Court of Missouri has not addressed whether this standard comports with the MHRA's directive that a complainant "set forth the particulars" of "the unlawful discriminatory practice." Mo. Rev. Stat. § 213.075.1. And although Missouri courts may look to federal case law in applying the MHRA, *see Daugherty v. City of Md. Heights*, 231 S.W.3d 814, 818 (Mo. 2007), no Missouri appellate court has considered whether the "like or reasonably related to" standard is consistent with the MHRA in light of *Morgan*'s interpretation of a similarly-worded federal statute. *Cf. Hill v. Ford Motor Co.*, 277 S.W.3d 659, 670 (Mo. 2009) ("Because there are no relevant Missouri cases as to the effect of failure to name a person in a charge who is later included in the civil lawsuit, the Court looks to federal law for guidance."). The textual analysis of *Morgan*, if followed by the Supreme Court of Missouri, would dictate that Richter's charge alleging discrimination based on race and sex under § 213.055.1 did not "set forth the particulars" of a different "unlawful discriminatory practice," *i.e.*, alleged retaliation under § 213.070(2), and thus did not properly exhaust her claim under the MHRA.

Even assuming, however, that the Supreme Court of Missouri would embrace a "like or reasonably related to" standard under the MHRA, we conclude that Richter failed to exhaust her administrative remedies with respect to her state-law retaliation claim. Richter's charge alleged only that she was removed from her store manager position due to her race and sex. She identified a single date on which the alleged discrimination took place, and she did not identify retaliation as a basis for her charge or set forth any facts regarding alleged retaliation. Considering the text of § 213.075.1, and drawing guidance from available Missouri appellate decisions, we conclude that Richter's claim of retaliation is not like or reasonably related to the allegations raised in her administrative charge for purposes of Missouri law. *See Reed v. McDonald's Corp.*, 363 S.W.3d 134, 144 (Mo. Ct. App. 2012) (holding that constructive discharge claim was not exhausted where charges filed with MCHR and EEOC alleged sexual harassment by a supervisor, but did not mention that plaintiff

no longer worked for employer, "failed to mention any facts or particulars relating to intolerable working conditions causing her to quit working," and thus "failed to include any facts reasonably related to a claim of constructive discharge"); *cf. Alhalabi*, 300 S.W.3d at 525-26 (holding that an administrative charge adequately alleged a claim of hostile work environment where the charge was not limited to a discrete act of discrimination, but rather described "pervasive racially discriminatory conduct" over a period of two years).

For these reasons, we conclude that Richter did not properly exhaust her Title VII and MHRA retaliation claims. The district court correctly dismissed those claims.

B.

Richter next argues that the district court erred in dismissing her wrongful discharge claim. The district court reasoned that the violations Richter reported to her employer were based on statutes that are too vague, do not amount to "serious misconduct," and do not sufficiently implicate public policy concerns to state a wrongful discharge claim under Missouri law.

Generally, Missouri adheres to the "at-will" employment doctrine, which allows an employer to terminate an employee for any reason or no reason at all. *Crabtree v. Bugby*, 967 S.W.2d 66, 70 (Mo. 1998). This doctrine, however, has limits, as "Missouri recognizes the public-policy exception to the at-will employment rule." *Margiotta v. Christian Hosp. Ne. Nw.*, 315 S.W.3d 342, 346 (Mo. 2010). Under the public policy exception, otherwise known as the wrongful discharge doctrine, an employer cannot discharge an at-will employee "because the employee reported to [her] superiors or to public authorities serious misconduct that constitutes violations of the law and of such well established and clearly mandated public policy." *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 91 (Mo. 2010) (internal quotation omitted). Therefore, in Missouri, an employee may not be terminated for reporting

wrongdoings or violations of law to superiors, or what has commonly been referred to as "whistleblowing." *Id.* at 92.

To succeed on a wrongful discharge claim, a plaintiff need not prove "exclusive causation;" she must prove only that the whistleblowing was a "contributing factor" in the employer's decision to discharge her. *Bazzi v. Tyco Healthcare Grp., LP*, 652 F.3d 943, 947 (8th Cir. 2011) (citing Missouri law). While a wrongful discharge action must be based on a constitutional provision, statute, regulation, or rule promulgated by a governmental body, the mere citation of such a provision "is not by itself sufficient to state a cause of action for retaliatory discharge." *Margiotta*, 315 S.W.3d at 347 (internal quotation omitted). Rather, "the plaintiff must demonstrate that the public policy mandated by the cited provision is violated by the discharge." *Id.* Thus, to present a claim for wrongful discharge, a plaintiff's petition must specify the legal provision violated by the employee, and "it must affirmatively appear from the face of the petition that the legal provision in question involves a clear mandate of public policy." *Frevert v. Ford Motor Co.*, 614 F.3d 466, 471 (8th Cir. 2010) (quoting *Misischia v. St. John's Mercy Med. Ctr.*, 30 S.W.3d 848, 863 (Mo. Ct. App. 2000)).

Richter asserts that she sufficiently stated a claim for wrongful discharge by pleading that she reported violations of state and federal law to her superior. In her complaint, Richter alleged that she reported four distinct acts of wrongdoing to her supervisor, Hulett. First, she reported that another employee was abusing the employee discount program, an action constituting felony theft under Mo. Rev. Stat. § 570.030, as well as mail and wire fraud and theft of honest services under 18 U.S.C. §§ 1341, 1343, and 1346. Specifically, Richter alleged that the employee purchased "thousands of parts through [Advance Auto's] employee discount program in order to operate his side business." Compl. ¶¶ 15, 46. Second, Richter reported that an employee was abusing the company's sick pay policy by "using her 'sick days' without a doctor's note," in violation of 18 U.S.C. §§ 1341, 1343, and 1346. Compl.

¶¶ 16, 46. Third, Richter reported that an employee improperly provided a refund to an unknown customer, which she asserted constitutes a felony theft under Mo. Rev. Stat. § 570.030 and fraud under 18 U.S.C. §§ 1341 and 1343. Compl. ¶¶ 17, 46. Fourth, Richter reported a $250 missing change order by an employee. *Id.* at ¶¶ 26, 46.

The district court dismissed Richter's claim, stating that "the statutes and public policy invoked by Richter . . . are insufficient to displace the unquestioned preference for at-will employment in the State of Missouri." The court noted that Richter had referenced specific laws in her complaint, but found these laws too vague and general to give rise to a wrongful discharge action. Because a "vague or general statute . . . cannot be successfully pled under the at-will wrongful termination theory," *Margiotta*, 315 S.W.3d at 346, the district court concluded that Richter did not state a legally cognizable claim for wrongful discharge. The court further explained that dismissal was proper because the reported misconduct was not "serious misconduct" and the public policy invoked by Richter was neither "fundamental" nor "substantial."

We agree with part of the district court's conclusion. Missouri law requires a wrongful discharge plaintiff to specify the constitutional provision, statute, or regulation the reported misconduct allegedly violated. *Id.* Richter's complaint does not indicate what legal provision, if any, the $250 missing change order violates. "Absent such explicit authority, the wrongful discharge action fails as a matter of law." *Id.* Therefore, we conclude the district court did not err in concluding that the allegation of a missing change order does not support a wrongful discharge action.

We also conclude that Richter's wrongful discharge claim based on the allegations of federal law violations fails as a matter of law. First, while Richter's complaint alleged violations of the mail and wire fraud statutes, the complaint made no reference to the use of the mails or wires. *See* 18 U.S.C. §§ 1341, 1343 (providing a person commits mail or wire fraud if he or she engages in "any scheme or artifice

to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises" and uses either the mails or the wires to execute such scheme). Moreover, the Supreme Court recently found that § 1346, which codifies the offense of honest-services fraud, is unconstitutionally vague when applied to fraud schemes other than bribery and kickbacks. *See Skilling v. United States*, 130 S. Ct. 2896, 2931 & n.42 (2010). Richter's complaint does not allege that the reported misconduct amounts to either a bribe or a kickback. She may not, therefore, rely on § 1346 to support a claim for theft of honest services. Accordingly, the district court properly concluded that the allegations of federal law violations do not support a wrongful discharge claim.

We disagree, however, with the district court's conclusion that Richter failed to state a claim for wrongful discharge based on the allegations of state law violations. Richter's complaint alleges that the abuse of the employee discount program and the giving of an improper refund constituted theft under Missouri law. "A person commits the crime of stealing if he or she appropriates property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion." Mo. Rev. Stat. § 570.030. Because the statute proscribes the prohibited conduct—stealing—with specificity and clarity, it is neither too vague nor too general to be "successfully pled under the at-will wrongful termination theory." *Margiotta*, 315 S.W.3d at 346. Thus, we conclude Richter could properly rely on § 570.030 to support her allegations of theft.

Taking the factual allegations in Richter's complaint as true, we further conclude the complaint sufficiently alleged that the reported misconduct constitutes stealing or theft by deceit under Missouri law. A person commits the crime of stealing or theft by deceit if he appropriates property or services of another with the purpose to deprive him thereof. Mo. Rev. Stat. § 570.030. Each wrongdoing alleged by Richter constitutes such an appropriation. Each wrongdoing involves an employee's attempt to appropriate company property with the purpose to deprive the company of

-14-

such property. The complaint specifically states that Richter reported an employee was abusing Advance Auto's employee discount program by purchasing automobile parts at a discounted rate for the employee's personal business. *See* Compl. ¶ 15. The complaint further alleged that this conduct "resulted in the loss of monies to [Advance Auto], constituting felony theft under [Mo. Rev. Stat.] § 570.030." Compl. ¶ 46. As for the improper refund allegation, the complaint says that Richter reported that another employee "was involved in improperly providing a refund on a motorcycle battery to an unknown customer, under circumstances where the sale of the battery could not be traced to any [Advance Auto] transaction." *Id.* at ¶ 17. This conduct, Richter alleged, amounts to "stealing monies from [Advance Auto]" and constitutes felony theft under § 570.030. *Id.* at ¶ 46. Based on these specific allegations, we conclude the complaint sufficiently alleges that the abuse of the employee discount program and the improper refund violated Missouri's stealing statute.

Richter also sufficiently alleged that she reported serious misconduct in violation of well established and clearly mandated public policy. *See Margiotta*, 315 S.W.3d at 347. As the district court noted, *Margiotta* did not offer "a road map for ascertaining how serious the misconduct must be before the at-will employment doctrine will be overcome." Similarly, at oral argument, neither counsel was able to articulate what factors we must consider in determining whether the misconduct is "serious" within the meaning of *Margiotta*. We must do our best to predict how the Supreme Court of Missouri would rule in this situation. Based on the guidance available from Missouri decisions to date, we are satisfied that the misconduct alleged by Richter—a felony theft under Missouri law—is "serious" enough, and the public policy against theft "clearly mandated" and "well established" enough, to state a claim for wrongful discharge. Missouri courts have recognized that "the theft of property from another, including one's employer, is a violation of criminal law." *Faust v. Ryder Commercial Leasing & Servs.*, 954 S.W.2d 383, 390 (Mo. Ct. App. 1997), *abrogated on other grounds by Fleshner*, 304 S.W.3d at 93. Thus, they have rejected the claim that "simple acts of theft" are insufficient to support a wrongful discharge

claim, noting the "almost universal agreement" that the law should encourage "the uncovering and prosecution of crime." *Brenneke v. Dep't of Mo., Veterans of Foreign Wars*, 984 S.W.2d 134, 138-39 (Mo. Ct. App. 1998).

In sum, we conclude that Richter alleged sufficient facts regarding the abuse of the employee discount program and the improper refund to state a wrongful discharge claim under Missouri law. The district court thus erred in dismissing her action based on these two particular allegations. *See, e.g., Akers v. RSC Equip. Rental, Inc.*, No. 4:09CV2022, 2010 WL 5479678, at *3, 5 (E.D. Mo. Dec. 31, 2010) (finding, under similar facts, plaintiff's complaint sufficiently alleged a claim for wrongful discharge where the reported misconduct was theft of company goods and services under section 570.030 of Missouri Revised Statutes); *see also Custom Hardware Eng'g & Consulting, Inc. v. Dowell*, No. 4:10CV000653, 2011 WL 1743662, at *10 (E.D. Mo. May 5, 2011) ("The issue before the Court is the sufficiency of the pleadings, not whether [plaintiff] will ultimately be able to prove all of the necessary elements [of her wrongful discharge action].") (internal quotation marks and citation omitted).

\*     \*     \*

For the foregoing reasons, we affirm the district court's dismissal of Richter's Title VII and MHRA claims, but reverse the dismissal of the state-law wrongful discharge claim and remand for further proceedings.

BYE, Circuit Judge, concurring in part and dissenting in part.

In her judicial complaint, Richter alleged Advance Auto unlawfully retaliated against her *after* she filed a discrimination charge with the EEOC. She further alleged the retaliation was a direct result of the filing of the EEOC charge. The issue

presented in this appeal, therefore, is a narrow one: is a claim alleging retaliation occurring *after* and *as a result of* the filing of a discrimination charge with the EEOC like or reasonably related to the allegations in the charge so as to be deemed exhausted. Because in my opinion Richter's retaliation claim is reasonably related to the allegations in the EEOC charge, as it grew out of these allegations, I would reverse the district court's dismissal of the claim for failure to exhaust administrative remedies. Therefore, I respectfully dissent from Part II.A of the court's opinion.

Prior to the Supreme Court's decision in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), the circuit courts overwhelmingly recognized a Title VII plaintiff need not file a new or amended EEOC charge of retaliation if the retaliation arose after and as a result of engaging in the protected activity of filing an EEOC charge. See Clockedile v. N.H. Dep't of Corr., 245 F.3d 1, 4 & n.3 (1st Cir. 2001) (collecting cases); see also Anderson v. Block, 807 F.2d 145, 148 (8th Cir. 1986). Then in Morgan, the Court addressed whether the continuing violation doctrine applies to discrete acts of unlawful employment practices which, although related to the acts alleged in the timely filed EEOC charge, are otherwise time barred. 536 U.S. at 106. The Court held the doctrine is inapplicable to Title VII claims involving discrete acts of discrimination or retaliation. Id. at 122. Because each discrete act of unlawful employment practice constitutes a separate actionable practice, the Court concluded "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Id. at 113-14.

Some courts moved away from their approach to related, post-filing retaliation claims in the wake of Morgan. Interpreting Morgan's holding broadly, these courts concluded a Title VII plaintiff must file a separate EEOC charge for each discrete act of retaliation, even when the retaliation occurs after a timely charge has been filed. See, e.g., Martinez v. Potter, 347 F.3d 1208, 1210-11 (10th Cir. 2003); Romero-Ostolaza v. Ridge, 370 F. Supp. 2d 139, 149 (D.D.C. 2005) ("[I]t makes sense to

apply <u>Morgan</u> to bar subsequent discrete acts that a plaintiff fails to exhaust in the administrative process."). Other courts, however, construed <u>Morgan</u> more narrowly and continued to adhere to the position post-filing acts of retaliation, resulting from filing the charge in the first instance, can be pursued without administrative exhaustion because they are like or reasonably related to the allegations in the charge. <u>See, e.g.</u>, <u>Jones v. Calvert Grp., Ltd.</u>, 551 F.3d 297, 302 (4th Cir. 2009) (concluding a Title VII plaintiff may bring a retaliation claim for the first time in federal court because "a claim of retaliation for the filing of an EEOC charge as discrimination is indeed like or reasonably related to and growing out of such allegations") (internal quotation marks and citation omitted); <u>Delisle v. Brimfield Twp. Police Dep't</u>, 94 F. App'x 247, 252-53 (6th Cir. 2004) (unpublished) (stating <u>Morgan</u> did not address whether courts can hear claims based on discriminatory acts occurring *after* the timely filed EEOC charge). Two primary considerations seem to underlay these courts' continued adherence to the like-or-reasonably-related-to exception for post-filing retaliation claims post-<u>Morgan</u>.

First, the operative facts in <u>Morgan</u> involved retaliatory acts occurring *prior to*, rather than *after*, the EEOC filing. <u>See</u> <u>Jones</u>, 551 F.3d at 303; <u>see also</u> <u>Lyons</u>, 307 F.3d at 1102-04 (concluding plaintiffs were not required to exhaust administrative remedies for claims alleging failure to promote as a result of filing an EEOC charge and explaining <u>Morgan</u> is inapplicable to post-filing discrete acts); <u>Delisle</u>, 94 F. App'x at 253 (stating <u>Morgan</u> did not address whether courts can hear claims based on discriminatory acts occurring *after* the timely filed EEOC charge). Additionally, the narrow issue before the Court in <u>Morgan</u> was "when the limitations clock for filing an EEOC charge begins ticking with regard to discrete unlawful employment practices." <u>Jones</u>, 551 F.3d at 303. <u>Morgan</u>'s holding, therefore, "concerns only Congress's clear preference as expressed in Title VII for prompt processing of all charges of employment discrimination . . . [and] does not purport to address the extent to which an EEOC charge satisfies exhaustion requirements for claims of related, post-charge events." <u>Id.</u> (internal quotation marks and citation omitted).

-18-

Second, public policy considerations favor excepting post-filing retaliation claims from administrative exhaustion. In concluding a plaintiff should not be required to file a new EEOC charge for retaliation claims arising after the filing, the Fifth Circuit, for example, emphasized the "needless procedural barrier" a contrary rule would require. See, e.g., Eberle v. Gonzales, 240 F. App'x 622, 628 (5th Cir. 2007) (unpublished) ("'It is the nature of retaliation claims that they arise *after the filing of the EEOC charge*. Requiring prior resort to the EEOC would mean that two charges would have to be filed . . . a double filing that would serve no purpose except to create additional procedural technicalities.'") (quoting Gupta v. E. Tex. State Univ., 654 F.2d 411, 414 (5th Cir. 1981)). "Eliminating this needless procedural barrier[,]" the court reasoned, "will deter employers from attempting to discourage employees from exercising their rights under Title VII." Gupta, 654 F.2d at 414. Further, in continuing to adhere to its pre-Morgan rule on exhaustion for post-filing retaliation claims, the Fourth Circuit explained "a plaintiff that has already been retaliated against one time for filing an EEOC charge will naturally be reluctant to file a separate charge, possibly bringing about further retaliation." Jones, 551 F.3d at 302; see also Schwartz v. Bay Indus., 274 F. Supp. 2d 1041, 1047 (E.D. Wis. 2003) (explaining the Seventh Circuit's rule for post-filing retaliation claims is premised on the fact that "having once been retaliated against for filing an administrative charge, the plaintiff will naturally be gun shy about inviting further retaliation by filing a second charge complaining about the first retaliation").

Our circuit considered Morgan's impact on exhaustion of related, post-filing retaliation claims in Wedow v. City of Kansas City, Missouri, 442 F.3d 661 (8th Cir. 2006). The majority states Wedow "disavowed" the applicability of the like-or-reasonably-related-to exception to a "'subsequent retaliation claim growing out of an EEOC . . . discrimination complaint.'" Ante at 6-7 (quoting Wedow, 442 F.3d at 672). It thus concludes Wedow forecloses Richter's contention she was not required to administratively exhaust her retaliation claim because the claim is like or reasonably related to the claim of discrimination based on race and sex Richter asserted in her

-19-

timely filed EEOC charge. I cannot agree with the majority's interpretation of the principles announced in Wedow.

To begin, Wedow did not purport to address whether a plaintiff asserting retaliation *after* and *as a result of* a timely filed EEOC charge must file a new or amended charge with the EEOC before pursuing her retaliation claim in federal court. Rather, the narrow issue in Wedow concerned only the applicability of the like-or-reasonably-related-to exception to "subsequent retaliatory acts [that are] of a like kind to the retaliatory acts alleged in the EEOC charge, which were specified to be of an *ongoing and continuing* nature." 442 F.3d at 674 (emphasis added). Wedow's holding is therefore limited to retaliation claims arising after the filing of the EEOC charge, but asserting "the same type of ongoing retaliation alleged in the timely filed administrative charge[]." Id.

The majority concludes Wedow "lends no support to Richter's claim [because] [u]nlike the plaintiffs in Wedow, Richter never alleged *any* retaliation in her charge filed with the EEOC." Ante at 7 n.1. I agree Richter's retaliation claim is unlike the retaliation claims asserted in Wedow and is therefore not governed by Wedow's *limited* holding. I do not, however, view our holding in Wedow as so *limiting* as to foreclose Richter's argument the like-or-reasonably-related-to exception to the exhaustion doctrine applies to subsequent retaliatory acts arising from the filing of the EEOC charge. On the contrary, while Wedow noted our circuit's narrowing of the exception post-Morgan, it also emphasized our reluctance to abandon it *in toto*:

> In light of the Supreme Court's clear rejection in Morgan of the continuing violation theory as a means to toll the limitation period for discrete acts of discrimination that occurred prior to the limitation period for a timely filed charge, some courts have concluded that the rule applies with equal force to discrete acts of discrimination that occur subsequent to a timely filed EEOC charge. See Martinez v. Potter, 347 F.3d 1208, 1210-11 (10 Cir. 2003) . . . . These courts require a new or

-20-

amended EEOC charge for each subsequent alleged incident of retaliation or discrimination, regardless of whether the subsequent acts are related to the allegations of the initial timely filed EEOC charge. . . .

[But] [w]hile our court has narrowed its view of what subsequent acts are sufficiently related to be within the scope of the properly filed administrative charges, we have not wholly abandoned the theory that reasonably related subsequent acts may be considered exhausted.

Wedow, 442 F.3d at 674 (internal citation omitted). To be sure, Wedow also stated that

[w]hile at one time, [the like-or-reasonably related-to] exception . . . permitted a finding that a subsequent retaliation claim growing out of an EEOC age discrimination complaint was sufficiently related to be within the scope of the lawsuit, see Wentz v. Md. Cas. Co., 869 F.2d 1153, 1154 (8th Cir. 1989), we have subsequently recognized that "retaliation claims are not reasonably related to underlying discrimination claims." Duncan v. Delta Consol. Indus., Inc., 371 F.3d 1020, 1025 (8th Cir. 2004).

Wedow, 442 F.3d at 672-73. Duncan, however, the case on which Wedow relied for the unnecessarily overinclusive statement "retaliation claims are not reasonably related to underlying discrimination claims," did not involve related, post-filing retaliation claims and is therefore inapposite to the proposition for which it was cited.

In Duncan, plaintiff had filed a charge with the EEOC alleging retaliation for having internally complained about sexual harassment, without alleging a separate claim of sex discrimination. Yet, plaintiff's Title VII judicial complaint asserted both retaliation *and* sex discrimination. The district court granted summary judgment in favor of the employer and we affirmed, concluding "charges of sexual harassment generally are not like or reasonably related to retaliation charges for complaining about antecedent harassment." Duncan, 371 F.3d at 1025. Our conclusion was based on our circuit's well-established, pre-Morgan precedent that retaliation claims are not

-21-

reasonably related to underlying discrimination claims *unless* the retaliatory acts "grew out of the discrimination charge [plaintiff] filed with the EEOC."  Wallin v. Minn. Dep't of Corrs., 153 F.3d 681, 688 (8th Cir. 1998); see also Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 223 (8th Cir. 1994) (stating "claims of race discrimination are separate and distinct from . . . claims of retaliation").  Thus, the allegedly *subsequent*—presumably, post-Morgan—recognition Wedow speaks of is nothing more than a reiteration of our long established—and pre-Morgan—circuit precedent holding retaliatory acts occurring *prior to* the filing of the EEOC charge are not like or reasonably related to discrimination claims alleged in the charge.  I therefore decline to view Wedow as foreclosing the applicability of the like-or-reasonably-related-to exception to retaliatory acts occurring *after* the filing of a discrimination charge with the EEOC and growing out of said charge as such acts are necessarily reasonably related to the underlying allegations in the charge.

As a result, Richter's retaliation claim asserting Advance Auto unlawfully retaliated against her for filing a discrimination charge with the EEOC is reasonably related to the underlying discrimination claims so as to be deemed exhausted.  I therefore respectfully dissent from Part II.A of the court's opinion, which affirms the district court's dismissal of Richter's retaliation claim for failure to exhaust administrative remedies.  I concur in Part II.B of the opinion concerning Richter's state-law wrongful discharge claim.

_____