REVISED October 6, 2011

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 5, 2011

Lyle W. Cayce
Clerk

No. 11-10120
Summary Calendar

DON WESLEY

                                            Plaintiff–Appellant

v.

GENERAL DRIVERS, WAREHOUSEMEN AND HELPERS LOCAL 745,
AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF
TEAMSTERS; BRENT TAYLOR

                                            Defendants–Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before REAVLEY, SMITH, and PRADO, Circuit Judges.
EDWARD C. PRADO, Circuit Judge:

This case involves a claim brought under 42 U.S.C. § 1981 by a terminated employee against his former union, which represented him in a grievance hearing in connection with his termination. The plaintiff–appellant, Don Wesley, alleges that the defendants–appellees, General Drivers, Warehousemen and Helpers Local 745 ("Local 745") and Brent Taylor, the union representative, discriminated against him on account of his race by failing to argue during the grievance hearing that Wesley was being terminated for a racially

discriminatory reason. The district court granted summary judgment for defendants. We affirm.

## I. BACKGROUND

Wesley is an African-American former employee of Yellow Transportation, Inc. While he was employed by Yellow Transportation, Wesley was a member of Local 745. In 2005, Wesley was fired from his job at Yellow Transportation. The reason given for his termination was that he had been caught by security surveillance cameras overstaying his break period while playing a pornographic video in the break room.

Local 745 pursued a grievance of Wesley's termination on his behalf. On April 19, 2005, Taylor represented Wesley at a grievance hearing. During the hearing, Taylor presented evidence and argued that Wesley should not be terminated. Wesley also had an opportunity to speak at the hearing. The committee presiding over the hearing denied Wesley's grievance. There were no further avenues for pursuing the grievance beyond that level.

Following the grievance hearing, Wesley filed a complaint naming Taylor and Local 745 as defendants. The complaint alleged that Taylor and Local 745 had violated 42 U.S.C. § 1981 by deliberately discriminating against Wesley on account of his race. The basis for Wesley's complaint was that Taylor had failed to argue during the grievance hearing that Yellow Transportation had chosen to terminate Wesley because of his race.

Taylor and Local 745 moved for summary judgment. The district court granted the motion. Wesley appeals.

## II. STANDARD OF REVIEW

Summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review the district court's grant of summary judgment de novo, viewing "all facts and evidence in the light most favorable to the

non-moving party." Apache Corp. v. W & T Offshore, Inc., 626 F.3d 789, 793 (5th Cir. 2010) (quoting Moss v. BMC Software, Inc., 610 F.3d 917, 922 (5th Cir. 2010)). Where, as here, the "burden at trial rests on the non-movant, the movant must merely demonstrate an absence of evidentiary support in the record for the non-movant's case." Bayle v. Allstate Ins. Co., 615 F.3d 350, 355 (5th Cir. 2010) (citation omitted). Satisfying this initial burden shifts the burden to the non-moving party to produce evidence of the existence of a material issue of fact requiring a trial. Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, [325] (1986)).

## III. DISCUSSION

Wesley has brought suit against Local 745 and Taylor under 42 U.S.C. § 1981.[1] To establish a prima facie case under § 1981, a plaintiff must show: (1) that he is a racial minority; (2) that the defendant intended to discriminate against him on the basis of race; and (3) that the discrimination concerns one or more of the activities enumerated in the statute. Felton v. Polles, 315 F.3d 470, 483 (5th Cir. 2002) (citation omitted), abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006). A plaintiff must show that the discrimination was purposeful. Gen. Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 389 (1982).

The Supreme Court has held that the burden-shifting framework developed in the context of Title VII in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), also applies to claims of racial discrimination under § 1981. Patterson v. McLean Credit Union, 491 U.S. 164, 186 (1989), superseded on other

---

[1] Section 1981(a) provides that "[a]ll persons within the jurisidiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." The statute defines "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

grounds by statute, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071; see also Lauderdale v. Tex. Dep't of Criminal Justice, Inst. Div., 512 F.3d 157, 166 (5th Cir. 2007). A plaintiff can establish a prima facie claim for racial discrimination under Title VII by showing that:

> (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.

Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 259 (5th Cir. 2009) (citing McDonnell Douglas, 411 U.S. 792 at 802). The Supreme Court also noted, however, that cases of racial discrimination are fact-specific, stating that the McDonnell Douglas four-part test would not necessarily be applicable to all fact situations. 411 U.S. at 802 n.13.

The Fifth Circuit reworked the McDonnell Douglas test to fit the fact situation in Stalcup v. Commc'n Workers of Am., 44 F. App'x 654, at *3 (5th Cir. 2002). That case, factually very similar to Wesley's, involved a lawsuit brought by a terminated employee against her former union, claiming that the union had discriminated against her on account of her disability when it failed to file a grievance against her employer for disability discrimination. Id. at *1. There, we held that the plaintiff had to prove the following elements to state a claim for disability discrimination against her union: "(1) she suffers from a disability; (2) she was subject to an adverse union action; and (3) she was treated less favorably than non-disabled employees."[2] Id. at *3 (citing Alexander v. Local 496, Laborers' Int'l Union of N. Am., 177 F.3d 394, 402–03 (6th Cir. 1999)). For

---

[2] We explained in Stalcup that the second McDonnell Douglas element, whether one is qualified for a particular job, is irrelevant where the complaint is based on discrimination in the grievance process, because one is "entitled to a non-discriminatory grievance process regardless of [one's] job qualifications." Id. at *3 n.4. The same rationale justifies removing this element in Wesley's case.

Wesley to state a claim for racial discrimination against Local 745 and Taylor, he must make a similar showing. First, he must show that he was subjected to an adverse union action. Second, he must show that he was treated less favorably by the union than employees of different races. Third, because this claim is brought under § 1981, he must prove that this differential treatment arose from purposeful racial discrimination.

Wesley argues that he was subjected to adverse union action because during his grievance hearing, his union representative, Taylor, never argued that Yellow Transportation had terminated him because of his race. Wesley invokes Goodman v. Lukens Steel Co., 482 U.S. 656 (1987), superseded on other grounds by statute, Judicial Improvements Act of 1990, Pub. L. No. 101-650, 104 Stat. 5114, for the proposition that § 1981 "does not permit a union to refuse to file any and all grievances presented by a black person on the ground that the employer looks with disfavor on and resents such grievances." Id. at 669. The facts in Goodman are distinct from the facts here. In Goodman, the district court found that the defendant unions were aware of employer discrimination but refused to file grievances requested by employees, that the unions had ignored grievances based on racial discrimination, and that the unions had "regularly refused to include assertions of racial discrimination in grievances." Id. at 666. Here, there is no evidence that Wesley's complaints about his union representation are shared by any other union members. There is no evidence that Local 745 or Taylor has adopted a practice of ignoring race-related grievances of members. There is no evidence about any member's interaction with the union aside from Wesley's. Having failed to present any evidence in this regard, Wesley cannot rely on Goodman for relief. See Faragalla v. Douglas Cnty. Sch. Dist. RE 1, 411 F. App'x 140, 159–60 (10th Cir. 2011) (holding that Goodman did not support former union member's § 1981 claim for racial

discrimination against her union where she had failed to prove that the union had a "policy or practice of declining to assert discrimination claims").

Although Wesley has not shown that Local 745 and Taylor have engaged in a practice of failing to pursue race-related grievances, Wesley may still recover under § 1981 by proving that his own experiences with the union were tainted by racial discrimination. Again, this first requires that Wesley show he was subjected to adverse union action. Wesley has failed to do so.

Wesley has not alleged that Local 745 or Taylor refused to bring a race-related grievance on his behalf. To the contrary, when Wesley contested his termination, Taylor represented him. Although Wesley argues that Taylor failed to raise racial discrimination in the hearing, Taylor did present evidence regarding disparate treatment of employees of different races. Specifically, in defense of Wesley, Taylor presented evidence that a white employee had once played a pornographic video during work hours and had not been terminated. Taylor also presented statements from several different employees that pornographic videos were frequently shown in the Yellow Transportation workplace and that others had not been disciplined for showing them. In addition, Taylor mentioned that a white employee who had called a black employee "the N word" had not been fired, and he argued that there was no reason to treat Wesley more harshly. Wesley had several opportunities to speak in the hearing, during which he also raised examples of what he perceived to be unequal treatment of employees based on race. While Wesley may have preferred Taylor to address racial discrimination against Wesley more directly, it cannot be said that Taylor refused to raise the issue.

At the conclusion of the hearing, the following exchange took place:

[Grievance Committee]: Mr. Wesley I have two (2) questions for you. The first question is have you had the opportunity to put everything on the record you want this Committee to know about your case?

Wesley: Yes.

[Grievance Committee]: The second question is has Local 745 properly represented you in defense of your case?

Wesley: Yes.

Wesley's argument that he was subjected to adverse union action during the hearing has less force given his opportunity to put additional evidence or argument before the Committee and his agreement that he was well represented by Local 745 during the hearing. See Allensworth v. Gen. Motors Corp., 945 F.2d 174, 179 (7th Cir. 1991) (holding that a union member had not stated a claim for racial discrimination by the union in part because he had "professed to be satisfied" with the union's action on his behalf).

Even if Wesley had presented evidence that he was subjected to adverse union action, he has failed to show that he was treated less favorably by the union than employees of other races. The only evidence presented that would allow comparison of the union's treatment of Wesley with its treatment of other members was given by Taylor, who stated in a declaration attached to the summary judgment motion: "I did not handle Wesley's grievance any differently than I would have handled any other employee's grievance, regardless of their race or national origin." Wesley has not presented any evidence to contradict this statement. See Donaldson v. Taylor Prods. Div. of Tecumseh Prods. Co., 620 F.2d 155, 159 (7th Cir. 1980) (holding that a union member failed to state a claim for racial discrimination by the union when he "failed to produce a scintilla of evidence that the grievances of similarly situated white employees were treated differently"). Because Wesley has failed to prove that he was treated differently than union members of other races, it goes without saying that he has failed to prove that the union purposefully discriminated against him because of his race.

## IV. CONCLUSION

Wesley has failed to state a prima facie claim for racial discrimination by the union under § 1981, and therefore the district court was correct to grant the defendants' motion for summary judgment.  Accordingly, we AFFIRM.