# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 26, 2013

No. 12-60592
Summary Calendar

Lyle W. Cayce
Clerk

DEBRA SIMMONS-MYERS,

Plaintiff - Appellant

v.

CAESARS ENTERTAINMENT CORPORATION, doing business as Harrah's Casino; BL DEVELOPMENT CORPORATION,

Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No: 2:10-CV-216

Before KING, CLEMENT, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Debra Simmons-Myers appeals the district court's grant of summary judgment in favor of Caesars Entertainment Corporation and BL Development Corporation (hereinafter "Harrah's"), arguing that she was fired from her job on account of her race and gender in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. For the following reasons, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-60592

**FACTS AND PROCEEDINGS**

Simmons-Myers (white female) was hired by Harrah's on April 27, 2009 as a Remote Sales Manager for the Arkansas and Texas markets, which were part of its Mid-South division. According to Harrah's, the function of the Remote Sales Manager was to work off-site (from home), selling meetings, conventions, and social events to associations and groups. Simmons-Myers had previously worked for Harrah's as an on-site Senior Sales Manager, but she resigned from that position in 2006. In the intervening time, Simmons-Myers worked for various hotels and resorts in the Arkansas and Texas markets.

Shortly after re-hiring Simmons-Myers, Harrah's hired three additional Remote Sales Managers – Michael Wilson (black male), Darrell Russell (black male), and Janice Jefferson (black female). As a condition of employment, Harrah's required its Remote Sales Managers to achieve a certain amount of sales during each quarter (other than the first quarter of employment). Any Sales Manager who failed to achieve a minimum of 80% of their sales goals in a single quarter was subject to a written warning, and if that Manager failed to achieve 80% of their goals in two quarters, they were subject to discharge. Simmons-Myers signed an agreement stating that she understood these terms the day that she was hired.

Simmons-Myers failed to meet 80% of her goals during the third and fourth quarters of 2009, which were the first quarters she was eligible for review. Although Harrah's chose not to terminate her, Simmons-Myers received a rating of "Development Opportunity" on her 2009 performance evaluation. Simmons-Myers was also contacted by her supervisor, Valerie Morris, who warned her that she was not meeting her goals, and offered assistance if needed.

After receiving the warning and performance evaluation, Simmons-Myers complained to Tammy Young that Valerie Morris (her direct supervisor) had sent her badgering emails and that Morris treated Darrell Wilson and Michael

No. 12-60592

Wilson more favorably than Simmons-Myers. Director of Employee Relations Joy Antolini later conducted an investigation into Simmons-Myers's allegations, but concluded that there was no evidence to support them.

Simmons-Myers again failed to meet her sales goals for the first quarter of 2010. Although Harrah's again chose not to terminate her, the Director of Sales (Kim Thomas) administered a written document "coaching" Simmons-Myers that she had failed to meet her sales goals for three consecutive quarters. Simmons-Myers proceeded to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Harrah's discriminated against her based on her sex because her supervisors had shown preferential treatment toward Michael Wilson and Darrell Wilson in a variety of ways, including taking them to dinner and imposing a different set of sales goals. Simmons-Myers again failed to meet her sales goals for the second quarter of 2010, and Thomas administered her a final written warning and gave her the lowest possible performance rating on her mid-term evaluation.

In mid-2010, the Mid-South division received a directive from Harrah's Corporate Finance Team to cut $10 million in expenses from its properties. As a result, the division decided to implement a reduction-in-force ("RIF") of over one hundred individuals across fifty different positions, including the Remote Sales Manager position. Harrah's asserts that the selected positions were determined by considering the profitability of each business unit, planned increases in productivity, ratios of employees to departmental metrics, and the potential impact on guests. Harrah's further asserts that the Remote Sales Manager position was included in the RIF because the position, as a whole, was not profitable for the company. In doing so, Harrah's did not consider the performance, profitability, or other circumstances of individual employees with respect to the Remote Sales Manager position. None of Simmons-Myers's direct bosses was involved in the decision. Simmons-Myers, along with Michael

3

No. 12-60592

Wilson, Darrell Russel, and Janice Jefferson, were all terminated on October 20, 2010.

Prior to learning that Harrah's was going to eliminate the Remote Sales Manager position, Simmons-Myers requested a notice of right to sue, which the EEOC granted on October 25, 2010. Simmons-Myers never informed the EEOC that she had been terminated as part of the RIF in the intervening time, and did not file a second charge of discrimination relating to her termination, prior to commencing the present action. On December 7, 2010, Simmons-Myers filed a complaint in the United States District Court for the Northern District of Mississippi, alleging: (i) discrimination based on race in violation of Title VII of the Civil Rights Act of 1964; (ii) discrimination based on gender in violation of Title VII; (iii) retaliation in violation of Title VII; and (iv) discrimination based on race in violation of 42 U.S.C. § 1981. After discovery, the district court granted summary judgment in favor of Harrah's. Simmons-Myers appeals.

## STANDARD OF REVIEW

"This court reviews the district court's grant of summary judgment *de novo*, applying the same standards as the district court." *Greater Hous. Small Taxicab Co. Owners Ass'n v. City of Hous., Tex.*, 660 F.3d 235, 238 (5th Cir. 2011) (citation omitted). "Summary judgment is warranted if the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine [dispute] as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (citation omitted and alteration in original). This court reviews questions about the exhaustion of administrative remedies *de novo*. *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006).

## DISCUSSION

*A.     Exhaustion*

The first question on appeal is whether Simmons-Myers has exhausted her administrative remedies, permitting her to proceed with her Title VII claims.

No. 12-60592

"[C]ourts have no jurisdiction to consider Title VII claims as to which the aggrieved party has not exhausted administrative remedies." *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 711 (5th Cir. 1994); *see* 42 U.S.C. § 2000e-5(f)(1). A Title VII suit may "extend as far as, but not further than, the scope of the EEOC investigation which could reasonably grow out of the administrative charge." *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993) (quoting *Terrell v. U.S. Pipe & Foundry Co.*, 644 F.2d 1112, 1123 (5th Cir. Unit B 1981)). However, "a charging party's rights should [not] be cut off merely because he fails to articulate correctly the legal conclusion emanating from his factual allegations." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970). Instead, the proper question is whether the charge has stated sufficient facts to trigger an EEOC investigation, *id.*, and to put an employer on notice of the existence and nature of the charges against him. *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878 (5th Cir. 2003).

### a. Racial Discrimination claims

We agree with the district court that Simmons-Myers did not properly exhaust her racial discrimination claims under Title VII. Although "a new theory of recovery [] can relate back to the date of the original charge when the facts supporting both the amendment and the original charge are essentially the same," *id.* at 879, that is not what happened here. The only discriminatory facts Simmons-Myers alleged prior to her dismissal were those in which she claimed to have been treated differently from other men in her department. Simmons-Myers did not refer to the race of any employee in her charge, nor did she allege that she was treated differently from the third Remote Sales Manager, Janice Jefferson, a black female. The district court was correct to conclude that no reasonable reading of Simmons-Myers's EEOC charge would put either the EEOC investigators or Harrah's on notice that her termination or any other adverse employment action was or could have been caused by discrimination

5

No. 12-60592

based on race. Accordingly, Simmons-Myers's Title VII racial discrimination claims are dismissed without prejudice.

### b.    *Gender and Retaliation claims*

Simmons-Myers's Title VII gender discrimination and retaliation claims that arise out of her termination are also dismissed without prejudice. Although Simmons-Myers made allegations of gender discrimination for acts prior to her termination in her EEOC charge, discrete discriminatory acts are not entitled to the shelter of the continuing violation doctrine. *See Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003). Her termination was a separate employment event for which Simmons-Myers was required to file a supplemental claim, or at the very least, amend her original EEOC charge. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

Simmons-Myers asks us to hold that she is entitled to an exception to exhaustion under *Gupta v. East Texas State University*, which does not require exhaustion for a retaliation claim growing out of an earlier EEOC charge. 654 F.2d 411, 414 (5th Cir. 1981).[1] But this court has not applied the *Gupta* exception to claims in which both retaliation and discrimination are alleged. *See Gupta*, 654 F.2d at 414 (creating exception for a claim involving only retaliation "growing out of an earlier charge," not a retaliation and discrimination claim

---

[1] We note that *Gupta* may no longer be applicable after the Supreme Court's decision in *Morgan*, 536 U.S. 101. Our sister circuits appear to be split on this issue. *See, e.g.*, *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003) (abolishing a *Gupta*-like exception). *But see Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 303 (4th Cir. 2009) (holding that *Morgan* did not abolish a *Gupta*-like exception); *Wedow v. City of Kan. City, Mo.* 442 F.3d 661, 672–76 (8th Cir. 2006) (holding that a narrow exhaustion requirement remains*); Delisle v. Brimfield Twp. Police Dep't.*, 94 F. App'x 247, 252 (6th Cir. 2004) (same); *Fentress v. Potter*, No. 09 C 2231, 2012 WL 1577504, at *2 (N.D. Ill. May 4, 2012) ("Given these post-*Morgan* tea leaves from the Seventh Circuit, as well as the three-to-one circuit split against abrogation, the court concludes that the exception remains valid."); *Gordon v. Bay Area Air Quality Mgmt. Dist.*, No. C08-3630 BZ, 2010 WL 367781, at *1 (N.D. Cal. Jan. 27, 2010) ("The Ninth Circuit authority that has interpreted [a *Gupta*-like exception] in light of *Morgan* has [found it to still be applicable]."). *See also Weber v. Battista*, 494 F.3d 179, 182–84 (D.C. Cir. 2007) (discussing other circuits' treatment of the issue). We need not answer this question today.

simultaneously alleged); *see also Scott v. Univ. of Miss.*, 148 F.3d 493, 514 (5th Cir. 1998) (holding that *Gupta* "is limited to retaliation claims due to the special nature of such claims"), *abrogated on other grounds by Kimel v. Fla. Bd. of Regents*, 528 U.S. 62 (2000); *Sapp v. Potter*, 413 F. App'x 750, 752–53 (5th Cir. 2011) ("Because the *Gupta* exception is premised on avoiding procedural technicalities, it has only been applied to retaliation claims alone [and not] claims in which both retaliation and discrimination are alleged."). Otherwise, Simmons-Myers would be required to return to the EEOC and exhaust her administrative remedies with respect to her discrimination claim, while proceeding with litigation on her retaliation claim. Permitting simultaneous proceedings such as these for the same inciting event would "thwart the administrative process and peremptorily substitute litigation for conciliation." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008); *see also Sapp*, 413 F. App'x at 753.

B.     *Summary Judgment*

We must now consider whether Simmons-Myers is entitled to relief on her racial discrimination claim under 42 U.S.C. § 1981, or her claim for gender discrimination and retaliation under Title VII, as evidenced by actions occurring prior to her termination. We affirm the district court's holding that Harrah's is entitled to summary judgment on each of these claims.

i.     *Racial Discrimination under 42 U.S.C. § 1981*

To make out a prima facie case of racial discrimination, Simmons-Myers must show that: (1) she is a member of a protected class; (2) she is qualified; (3) she experienced an adverse employment action; and (4) she was replaced by someone outside the protected class, or, in the case of disparate treatment, that others similarly situated were treated more favorably than she. *Wesley v. Gen. Drivers, Warehousemen & Helpers Local 745*, 660 F.3d 211, 213 (5th Cir. 2011) (recognizing that "the burden-shifting framework developed in the context of

No. 12-60592

Title VII in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 [] (1973), also applies to claims of racial discrimination under § 1981." (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989))).  However, Simmons-Myers was not replaced because her position was eliminated, and she has offered no evidence that others similarly situated were treated more favorably than she.  The only disparate treatment Simmons-Myers alleged was her termination.  This cannot serve as a basis for a disparate treatment claim because the Remote Sales Manager position was eliminated in its entirety and all employees were fired, regardless of their race.  Furthermore, as the district court explained, there is no evidence to substantiate Simmons-Myers's theory that firing the Remote Sales Managers (all of whom, other than Simmons-Myers, were black) was either a pretext for, or a way to cover up, any aspect of race discrimination.  Therefore, there is no "evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996).  Accordingly, Simmons-Myers' claim for racial discrimination under 42 U.S.C. § 1981 is dismissed with prejudice.

ii.    *Gender Discrimination and Retaliation claims under Title VII*

Simmons-Myers has abandoned her non-termination gender and retaliation claims by failing to properly raise these issues on appeal.  *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in its *initial* brief on appeal.").  Even if we were to consider these issues, Simmons-Myers could not make out a prima facie case of discrimination or retaliation because she did not experience an adverse employment action prior to termination.  *See McDonnell Douglas*, 411 U.S. at 802; *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009) (requiring an adverse employment action in retaliation cases).  Under Title VII, an adverse employment action must be an "ultimate employment decision," such

as "hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)). Title VII does not cover "every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) (quoting *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 878 (5th Cir.1999)). The written warnings administered by Thomas do not constitute materially adverse actions under this standard, nor would they have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (citation omitted). Simmons-Myers' claims for gender discrimination and retaliation prior to her termination are dismissed with prejudice.

AFFIRMED.