# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

February 18, 2014

Lyle W. Cayce
Clerk

13-50500
Summary Calendar

VIRGINIA C. MUNOZ,

Plaintiff – Appellant

v.

SETON HEALTHCARE, INCORPORATED, doing business as Seton Health Network; SETON FAMILY OF HOSPITALS; SETON NORTHWEST HOSPITAL; SETON SOUTHWEST HOSPITAL; ASCENSION HEALTH,

Defendants – Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:11-CV-00151-LY

Before DAVIS, SOUTHWICK, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Virginia C. Munoz brought claims of discrimination based upon her disability, age, and national origin, and retaliation against Seton Healthcare Incorporated and affiliated entities. The district court granted summary judgment to the defendants as to all claims. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-50500

## FACTUAL AND PROCEDURAL BACKGROUND

Virginia Munoz is sixty-one years old and suffers from rheumatoid arthritis and autoimmune disease, which render her disabled. In 2004, Seton hired her to be a "Patient Access Representative" or "PAR" at the Seton Northwest Hospital in Austin, Texas. PAR responsibilities and duties vary depending on where the PAR is stationed within the hospital. Between 2004 and her termination in October, 2010, Munoz worked as a PAR at two Seton hospitals – Northwest and Southwest – and in several different departments. Munoz spent most of her time at Seton's hospitals working in the emergency department, but also worked for short periods in other departments.

Munoz received the diagnoses of her rheumatoid arthritis and autoimmune disease in 2007. Pursuant to the Family Medical Leave Act ("FMLA"), she received permission to miss work occasionally in order to receive scheduled injections of immunosuppressant drugs, but she did not formally request or present any documentation of necessary accommodations. She regularly applied for openings in other departments due to her concerns about interacting with people who might have infectious diseases.

Beginning in 2008, Munoz was transferred to the outpatient admissions department, though she still occasionally worked shifts in the emergency department. Sometimes that was as often as three or four times per week. In August 2009, Seton transferred Munoz to work exclusively in the emergency department. This occurred after a negative performance review and observations regarding her capabilities to manage the more complex tasks required of PARs in the outpatient department. Munoz subsequently requested that she be moved back to outpatient, claiming that the more physically-intensive PAR duties in the emergency department aggravated her rheumatoid arthritis. Her supervisors refused for the same reasons they originally transferred her. Around this time, she filed a charge with EEOC

2

No. 13-50500

charge against Seton, claiming the transfer was undertaken with discriminatory motives.

In February 2010, with Seton's encouragement, she filed for and received ten weeks of leave under the FMLA. Shortly thereafter, her doctor completed a form certifying that she was totally disabled and unable to work. When she failed to return to work following that period of leave, Seton encouraged her to apply for a six-month leave of absence pursuant to company policy. She never filled out the paperwork and never returned. In October 2010, Seton terminated her employment.

Munoz originally filed this action in Texas state court, alleging claims under the Americans with Disabilities Act ("ADA"), FMLA, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act ("ADEA"), the Texas Commission on Human Rights Act ("TCHRA"), and the state workers' compensation law. Seton removed the case to federal court. There, the workers' compensation claim was severed. Munoz filed two amended complaints with leave and then subsequently terminated her attorney. Proceeding *pro se*, as she does here, she attempted to file another amended complaint alleging that a vaccination Seton provided to her caused allergic reactions. A magistrate judge considered cross-motions for summary judgment and a motion to strike the third amended complaint. The report and recommendation suggested granting Seton's summary judgment motion, denying that of Munoz, and striking the third amended complaint. Munoz filed a pleading, construed by the district judge as an objection, re-alleging factual material from the third amended complaint and claiming the magistrate judge's report was erroneous. The district court overruled her objections and adopted the report and recommendations. Munoz filed a timely appeal.

3

No. 13-50500

DISCUSSION

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a).  A genuine dispute of material fact exists only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

*a. Preliminary Matters*

Munoz filed a third amended complaint alleging negligence and fraud in connection with a vaccination she received from Seton during her employment, retaliation with regard to her workers' compensation claim, and spoliation of evidence.[1]  Upon Seton's motion to strike, the magistrate judge noted that Munoz failed to seek leave and filed her new complaint eight months beyond the deadline listed in the scheduling order for amended pleadings.  On this basis he recommended the complaint be stricken.  The district judge did so. Resolution of a motion to strike is reviewed for abuse of discretion. *Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169, 178 (5th Cir. 2007).  Because Munoz filed her third amended complaint without consent or leave, we conclude the district court did not abuse its discretion in striking it.  *See id.*; *see also* FED. R. CIV. P. 15(a)(2).

Munoz included Ascension Health, Seton's parent corporation, as a defendant in each of her complaints.  The district court concluded Ascension was never Munoz's employer and thus could not be responsible for any adverse employment action she suffered.  Neither Munoz's pleadings nor briefing make

---

[1] Her amended complaint was titled "Plaintiff's Second Amended Petition," but it was actually her third complaint.  Furthermore, it alleged only her new claims and failed to restate claims from her previous complaints.  Seton argued the failure to restate those claims amounted to abandonment.  The magistrate judge concluded the claims were not abandoned, and we do not disturb that finding here.

4

clear the basis of Ascension's alleged liability.[2] In determining that Ascension was not Munoz's employer, the district court apparently relied upon the fact that Munoz presented no evidence that Ascension had anything to do with her transfer or termination. *See Chaiffetz v. Robertson Research Holding, Ltd.*, 798 F.2d 731, 735 (5th Cir. 1986) (an employer must be the "entity [making] the final decisions regarding employment matters related to the person claiming discrimination"). We agree. To the extent Munoz argues Ascension and Seton are integrated and thus both liable to her as employers under the relevant statutes, we conclude this argument fails. Munoz presents no evidence indicating that Ascension made any of the decisions resulting in the allegedly adverse actions of which Munoz complains. Dismissal was proper.

### b. *ADA Claims*

The ADA prohibits discrimination against qualified individuals with disabilities and requires employers to make reasonable accommodations for otherwise qualified disabled employees. 42 U.S.C. § 12112(a); 12112(b)(5)(A). To determine whether Munoz's claims survive summary judgment, we apply the *McDonnell Douglas* framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Munoz's initial burden is to submit a *prima facie* case of discrimination based upon her disability by showing (1) she is disabled, (2) qualified for the job, (3) faced an adverse employment action because of her disability, and (4) was replaced by or treated less favorably than non-disabled employees. *EEOC v. Chevron Phillips Chemical Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009).

---

[2] For example, Munoz argues Ascension should be liable because Texas state insurance regulations require parent corporations to guarantee workers' compensation programs and Ascension administers the Seton workers' compensation plan. As discussed above, her workers' compensation claims are not before us in this appeal.

No. 13-50500

Munoz alleges Seton discriminated against her because of her disability through three allegedly adverse employment actions. The first was transferring her to the emergency department in August 2009; the second was refusing to transfer her back; the third was when it ultimately terminated her in October 2010. We discuss the transfer and denial first, followed by her ultimate termination.

At the time of her August 2009 transfer, Munoz was not under any restrictions due to her rheumatoid arthritis. In October 2009, Seton's internal occupational health department restricted her activity for four weeks, but Munoz provided no documentation of any restrictions on her abilities to work in the emergency department. In any case, "a purely lateral transfer is not an adverse employment action." *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999). It is undisputed here that PARs, regardless of where they were stationed within the hospital, maintained the same pay, benefits, and title. Munoz's mere subjective preference of the outpatient department to the emergency department does not make her transfer or Seton's refusal to transfer her back adverse. *See Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 771 n.8 (5th Cir. 2001). Munoz failed to make out a *prima facie* case of discrimination on these two of Seton's actions.

By the time of her termination in October 2010, Munoz was completely disabled. This is shown by a disability form completed by her treating physician and from her own testimony. As previously discussed, Munoz's *prima facie* case required her to show she was qualified for the position from which she was terminated. *See Chevron Phillips Chem. Co.*, 570 F.3d at 615. It is undisputed that Munoz became completely disabled and unable to work in February 2010. She was not terminated until more than eight months later, when she did not apply for a leave of absence and never returned to work

6

No. 13-50500

following her ten weeks of authorized FMLA leave.  Munoz did not present a *prima facie* case of discrimination with respect to her termination.

Munoz alleges Seton's refusal to transfer her back to the outpatient department in 2009 violated Seton's responsibility to make reasonable accommodations for her disability.  *See* 42 U.S.C. § 12112(b)(5)(A).  The ADA entitles disabled persons to reasonable accommodations but not to any particular job.  *Jenkins v. Cleco Power, LLC,* 487 F.3d 309, 316 (5th Cir. 2007).  An employer is required to engage in an "interactive process" and a "meaningful" dialogue for arranging the accommodation.  *Chevron Phillips Chem. Co.*, 570 F.3d at 621.  It is undisputed that, by 2009, Seton was aware of Munoz's rheumatoid arthritis and her desire to avoid the emergency department and its attendant risk of exposure to infectious diseases.  Munoz also claimed that the physical demands of the emergency department were too great, but obtained documentation of this only in October 2009 after she had been transferred and denied the opportunity to move back to the outpatient department.  Nonetheless, Seton provided for her a surgical face mask to protect her from airborne diseases and permitted her to work eight-hour shifts instead of the typical twelve-hour shifts.  These accommodations, while not Munoz's preferred accommodations, were enough to satisfy Seton's duties under the ADA.  *See Jenkins*, 487 F.3d at 316.

c.  *Title VII, ADEA, TCHRA, and FMLA*

   i.  *Primary Claims*

Because Munoz's claims under Title VII, the ADEA, and the TCHRA involve the same conduct alleged above, we discuss them together.  Title VII prohibits employment discrimination based on, among other traits, race and national origin.  42 U.S.C. § 2000e-2.  The ADEA prohibits employment discrimination on the basis of age.  29 U.S.C. § 623(a) The TCHRA prohibits

7

employment discrimination on all of these bases. TEX. LABOR CODE § 21.051. Finally, the FMLA prohibits retaliation by an employer for an employee's enjoyment of its benefits. 29 U.S.C. § 2615(a)(1).

To analyze Munoz's several claims of discrimination based on circumstantial evidence, we return to the *McDonnell Douglas* framework. We begin with the claims under Title VII and the ADEA. Munoz may establish a *prima facie* case for discrimination based upon her race, national origin, and her age, by showing: (1) she is a member of a protected class, (2) was qualified for the position, (3) was subjected to an adverse employment action, and (4) was treated less favorably than similarly-situated employees who are not members of her protected class. *Wesley v. Gen. Drivers, Warehousemen & Helpers Local 745*, 660 F.3d 211, 213 (5th Cir. 2011). For her ADEA claim, Munoz also must show she was "replaced by someone younger" and was "otherwise discharged because of [her] age" as part of the fourth factor. *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004). Munoz is Hispanic and was over forty years of age when the alleged adverse employment actions took place. She alleges discrimination in her transfer and termination. She also alleges Seton discriminated against her by not providing her training for certification in completing birth certificates.

Munoz claims her transfer out of the outpatient department and Seton's refusal to transfer her back were motivated by her race, national origin, and age. As discussed above, "purely lateral" transfers do not represent adverse employment actions. *See Burger*, 168 F.3d at 879. We concluded above that the transfer from the outpatient department and the emergency department is "purely lateral" and therefore not adverse. *Id.* Consequently, Munoz's allegations regarding her transfer fall short of a *prima facie* case of discrimination on the basis of race, national origin, or age under Title VII and the ADEA.

No. 13-50500

Munoz further claims her termination was motivated by her race, national origin, or age.  We already concluded she was not qualified for the position she sought or from which she was terminated.  Her own testimony and a form completed by her treating physician show she was totally disabled in February 2010, months before her termination.  By October 2010, Munoz was not qualified for the position from which she was terminated.  Therefore, she did not present a *prima facie* case that her termination was motivated by her race, national origin, or age.  *See Wesley*, 660 F.3d at 213; *Rachid*, 376 F.3d at 309.

Munoz further alleges Seton denied her training for completing birth certificates and did so because of her race, national origin, or age.  We have held the "denial of [training peripheral to a plaintiff's main duties] is not an adverse employment action covered by Title VII" when that denial does not "tend to result in a change of employment status, benefits, or responsibilities." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 407 (1999) (quotation marks omitted).  PAR duties in the emergency department, where Munoz worked, did not include completing birth certificates.  Seton's denial of birth certificate training, then, does not "result in a change of employment status, benefits, or responsibilities" for Munoz.  *Id.*  We conclude this denial of training was not an adverse action.  Therefore, Munoz fails to make out a *prima facie* case of discrimination based upon her race, national origin, and age with regard to Seton's denying her birth certificate training.

We note here, as did the district court, that the foregoing analysis is fully applicable to Munoz's state law claims under the TCHRA and she may not recover under its provisions for substantially the same reasons she may not recover under Title VII or the ADEA.  *See Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003) ("The Legislature intended to correlate state

9

law with federal law in employment discrimination cases when it enacted the TCHRA.").

*ii. Retaliation*

The ADA, Title VII, the ADEA, the TCHRA, and the FMLA all contain provisions prohibiting retaliation for asserting the rights or enjoying the benefits under those statutes. *See Jenkins*, 487 F.3d at 317 (ADA); *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 348 (5th Cir. 2007) (Title VII); *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 259 (5th Cir. 2001) (ADEA); *Mauder v. Metro. Transit Auth. of Harris Cnty., Tx.*, 446 F.3d 574, 583 (5th Cir. 2006) (FMLA).

We again utilize the *McDonnell Douglas* framework. In the retaliation context, a *prima facie* case requires a showing that (1) Munoz engaged in a protected activity pursuant to one of the statutes, (2) an adverse employment action occurred, and (3) there exists a causal link connecting the protected activity to the adverse employment action. *See, e.g., Holtzclaw*, 255 F.3d at 259. Munoz alleges her termination was in retaliation for filing an EEOC charge of discrimination against Seton in August 2009. The district court concluded Munoz had engaged in a protected activity and that the termination was an adverse employment activity. We agree and conclude the first two elements of the analysis are satisfied. Finally, Munoz must show a causal link by presenting some evidence tending to show a relationship between the filing of her EEOC charge and her termination. The only evidence she presents, beyond her own subjective belief that Seton had forced her out of the outpatient department with discriminatory motives, was the timing of her termination in relation to the EEOC charge. Where timing is the only evidence of retaliation, the "temporal proximity must be very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (quotation marks omitted). Here, Munoz's

No. 13-50500

termination occurred more than a year after the EEOC charge was filed. The period from August 2009 to October 2010 cannot be said to be "very close." We conclude Munoz's claims of retaliation under all of these statutes must fail.

AFFIRMED.