# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-31190

United States Court of Appeals
Fifth Circuit

**FILED**
August 3, 2017

Lyle W. Cayce
Clerk

SHARON MARIE CHESTER,

> Plaintiff - Appellant

v.

FRANK N. ARENA, JR.; FRANKLIN SQUARE RENTALS,

> Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:16-CV-13471

Before DAVIS, JONES, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Plaintiff-appellant Sharon Marie Chester, a Caucasian female, rented a commercial space from defendant-appellee Frank N. Arena, Jr., a Caucasian male, in Chalmette, Louisiana. After Chester posted what Arena deemed "controversial signage" that might be construed as racist, Arena posted a notice to vacate. Chester then sued Arena under 42 U.S.C. §§ 1981 and 1982, alleging that Arena discriminated against her based on her association with her African-American clients. The district court granted summary judgment to

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-31190

Arena, finding that Chester did not make out a *prima facie* case of racial discrimination under 42 U.S.C. §§ 1981 and 1982.  We AFFIRM.

## BACKGROUND

According to Chester's complaint, she rented Arena's commercial space in Chalmette, Louisiana, to "operate[] a private practice as a healthcare provider, as well [as] a grassroots organizer and board approved clinical supervisor."  She claims that she "especially caters" to the African-American community, which makes up 30–40% of her clientele.

The following evidence comes directly from Chester's two-page, summary-judgment affidavit.  Chester says that Arena originally did not require her to sign a lease for the commercial space.  According to Chester, however, things changed when, in April or June 2015, she hung a sign in the window of the commercial space, which read: "Eracism- All Colors with Love and Respect."  Chester claims that Arena told her the sign was "offensive" and asked her to remove the sign, stating, "I thought about it and I have to worry about my other tenants.  Black people can't read and are going to confuse that for being pro-racism.  They could firebomb my building."  Arena then asked Chester to sign a written lease and obtain $500,000 in "firebomb" insurance.  Chester claims that she signed the lease and purchased a $1 million insurance policy, but she says that Arena thereafter rejected her next month's rent payment and his son "accosted" her "until she left the property, forcefully evicting her."

Chester sued Arena on August 1, 2016, alleging, *inter alia*, violations of 42 U.S.C. §§ 1981 and 1982.  As relevant here, she claimed that Arena violated her rights "to make and enforce contracts without regard to race" (under section 1981) and "to purchase, lease and to hold real and personal property without regard to race" (under section 1982).  The twist is that she admitted she does not allege that Arena discriminated against *her* on the basis of *her*

2

race; instead, she sees unlawful discrimination in that Arena's actions were allegedly "based upon [her] affiliation with African-Americans."

Arena filed a motion for summary judgment on August 30, 2016, asserting that Chester had not made out a *prima facie* case of discrimination prohibited by sections 1981 or 1982. For both statutes, this court has said that a *prima facie* case of discrimination requires a plaintiff to establish (1) that she is a member of a racial minority, (2) that the defendant had intent to discriminate on the basis of race, and (3) that the discrimination concerned one or more of the activities enumerated in the statute. *See, e.g.*, *Wesley v. Gen. Drivers, Warehousemen & Helpers Local 745*, 660 F.3d 211, 213 (5th Cir. 2011). Focusing on the first two prongs, Arena argued that Chester clearly is not a member of a racial minority and that there is no evidence that Arena had intent to discriminate on the basis of race.

The district court granted summary judgment to Arena. Addressing only the first prong, the court stated that Chester is not a member of a racial minority and her relationship with African-Americans through "their seemingly coincidental patronage of her business" was not sufficiently intimate to fall within the scope of some cases that have permitted individuals to bring section 1981 and 1982 claims "if they have been discriminated against due to their association with minorities."

## DISCUSSION

This court reviews a grant of summary judgment *de novo*, applying the same standards that the district court applied. *See, e.g.*, *Koehler v. Aetna Health, Inc.*, 683 F.3d 182, 184 (5th Cir. 2012)). Summary judgment should be affirmed if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Id.* In addition, it is well settled that this court may affirm a grant of summary judgment based on any rationale

presented to the district court for consideration and supported by facts uncontroverted in the summary judgment record. *E.g.*, *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015).

The parties primarily debate whether this court's precedents require Chester to be a racial minority, or sufficiently associated with racial minorities, to bring section 1981 and 1982 claims. But whatever the resolution of that debate, the parties agree that a *prima facie* case of discrimination under these statutes requires a showing of intentional discrimination on the basis of race.

Chester did not establish a genuine issue of material fact on the discriminatory-intent question. Her only summary-judgment evidence on discriminatory intent was Arena's alleged remarks that African-Americans are unable to read and might be confused by her sign, followed by his request that she sign a lease and obtain insurance.[1] She argues that "these comments constitute direct evidence of discriminatory intent because they are facially discriminatory in nature." But Chester ignores the last part of Arena's alleged remarks—his worry that African-Americans will confuse Chester's sign "for being pro-racism." Indeed, the very sentence Chester emphasizes to illustrate discriminatory intent actually displays Arena's desire to *avoid* displaying a message that might be construed as racist. Claiming African-Americans cannot read or will be confused may be rude, but, viewed in the light most favorable to Chester, it does not show an intent to discriminate on the basis of race.

The district court's judgment is **AFFIRMED**.

---

[1] At oral argument, Chester's counsel relied on discovery responses that post-dated, and thus were not attached to, Chester's opposition to Arena's summary-judgment motion. But counsel conceded that Chester never requested a continuance to complete her review of the discovery responses, and we do not consider that evidence, which was not presented to the district court.